665 So.2d 244 (1995)
Doyle E. DEAN, Appellant,
v.
Elizabeth DEAN, f/k/a Betty Dean, Appellee.
No. 94-1027.
District Court of Appeal of Florida, Third District.
October 5, 1995.
Order Denying Rehearing January 17, 1996.
*245 Luther M. Taylor, Palm Beach Gardens, for appellant.
Rosenthal, Rosenthal & Rasco and Daniel Kaplan, N. Miami Beach, for appellee.
Before HUBBART, JORGENSON and GERSTEN, JJ.
HUBBART, Judge.
This is an appeal by the husband Doyle E. Dean from a final order enforcing a 1964 divorce decree by awarding the wife Elizabeth Dean child support arrearages due under the decree. Although (a) the arrearages began in 1964 when the husband ceased making any child support payments after only several months of payments, and (b) the youngest of the parties' two minor children reached his majority in 1979, no action was brought by the wife seeking recovery of the child support arrearages until August 1993, when the action below was filed. The trial court rejected the husband's affirmative defense of laches on the basis that (a) the wife's proffered reasons for not commencing the instant action from 1964-93 were all justifiable, and (b) the husband was not prejudiced by the delay. We disagree and reverse.

I
The trial court made the following findings of fact in an extensive and thoughtful order which is now under review.
"The parties were married on March 13, 1954, in Brevard, Florida. The parties had two children, namely, Christine E. Dean, n/k/a Christine Salinetro, born April 13, 1961; and Edward J. Dean, born February 13, 1958. A final decree of divorce between the parties was entered on March 31, 1964. Pursuant to the Decree, the Husband was to pay to the Wife, as support, the sum of $90.00 per month per child. Support payments were to commence on April 1, 1964 and `... continue each and every month thereafter until each child reaches the age of 21 years or otherwise becomes emancipated sooner.'
The Wife claims that the Husband never paid child support. She claims that 181.5 months of child support are due for a total of $16,362 for Edward Dean, and 216.5 months are due for a total of $19,485 for Christine Dean n/k/a Christine Salinetro. The Wife testified, and the Court finds, that she supported the two children of the marriage through their emancipation without support from the Husband except for the first four months following the entry of the Divorce Decree.
... .
In 1965, the Wife remarried. The Husband claims that the Wife never advised him of her remarriage or the address where she and the children resided. The Wife denies this claim and testified that the Husband telephoned her at her new residence. She stated that he made no demand for visitation, nor did they discuss child support. The Court finds the Wife's testimony to be credible.
In 1968, the Husband relocated to Palm Beach. The Wife was not aware of his relocation. In 1968, the Wife remarried again following a divorce from her second husband. She concedes that she did not advise the Husband of her divorce, remarriage or new residence. Likewise, the Husband made no effort to locate her or the children. When asked why she did not seek court assistance to collect past due child support from 1964 to 1968, she testified that she was in fear of her Husband due to the fact that he was physically abusive during the marriage and the divorce was `nasty.'

*246 In 1969, the Wife attempted to locate the Husband through an agency in order to seek past due child support. However, she received information which led her to believe that the Husband was dead. The Husband questions the Wife's credibility on this point, contending that she made no effort to verify his purported demise with the Husband's family who resided in Miami and in Brevard County. He testified that he never hid from the Wife. Nonetheless, the Court concludes that the Wife's testimony is credible. The Court finds that the Wife did not know that the Husband was alive until 1985.
Both Edward and Christine moved from their mother's home upon reaching the age of 18 years. Each held employment. The wife testified that they returned to the home prior to the age of 21 and that she continued to support them. Her testimony was indefinite in this regard. Rather, the Court finds that each child was emancipated at the age of 18 years. [The youngest child attained majority in 1979.]
In 1985, when the Wife and children learned that the Husband was alive, Edward Dean, sought to reconcile with his father. The Court finds that he requested the Wife to forbear any action to recover child support in order to encourage the reconciliation. The Wife accommodated his request believing reconciliation was more important than recovery of past due support obligations. Thereafter, Edward relocated to Palm Beach, Florida, to assist his father in his business. Within a short time, the Husband terminated Edward's employment.
In 1989, Edward and the Husband again sought reconciliation. The Husband was invited to Edward's wedding. In turn, the Husband gave Edward a deed to a condominium and a ring. The Husband testified that the condominium was worth $28,000.00 and that the ring was worth $11,000. Edward sold the condominium in 1991 for $20,000. The Court finds that both the condominium and the ring were wedding gifts. Shortly after the wedding, Edward and the Husband had irreconcilable differences. At that time Edward urged the Wife to seek past due child support. While the Wife is a Judicial Assistant to a county court judge, she has been unable to afford an attorney until present counsel agreed to file the present action.
The Husband testified that he is now 58 years old. He has been remarried three times. His most recent marriage has been within the last nine months. He testified that he has raised and supported two other children (now ages 25 and 26) from his prior marriages, and currently pays child support in amount of $749.00 a month for a child (age 11) of another marriage. He pays another ex-wife lump sum alimony. In his current marriage, he is raising two children of his new wife. According to his statement of net worth, the Husband has a total net worth of $124,116 (Petitioner's Exhibit 3).
In regard to prejudice, the Husband claims that (i) he would not have given the condominium and ring to his son on his wedding if he knew he would be obligated for child support arrearages; and (ii) that he never would have married and had additional children, or would have assumed additional child support obligations, if he knew that his Wife would now seek past due child support that had not been sought over the last thirty years. Moreover, as a businessman in Palm Beach, he claims he never would have assumed extensive personal obligations on certain mortgages and other obligations for which he has personal liability if he knew that he had to pay past due child support obligations, plus interest, to the Wife.
The Wife admits that she did not contact the Husband concerning child support from 1964 to 1969, and from 1985 until this action was filed. As indicated above, she initially did not seek relief due to fear of the Husband. Thereafter, she believed he was dead until 1985. From 1985 to 1990, she decided to forbear against the Husband at the request of her son to encourage reconciliation. The Husband and son's efforts towards reconciliation terminated in 1990. Since then, the Wife testified that she has sought counsel to assist her in filing this action."
*247 Order on Pet. for Enforcement of Final J. at 2-6.
On August 2, 1993, three years later, the wife filed a petition to enforce the final judgment in which she sought child support arrearages from the husband for the years 1964-79, plus interest. The husband answered by asserting the equitable defense of laches. The trial court rejected the defense of laches, granted the petition to enforce the final judgment, and ultimately awarded the former wife $35,847.00 in child support arrearages, plus interest, for a total of $88,590.04. The husband appeals.

II
The law is well settled that a proceeding for the enforcement of periodic alimony or child support orders is equitable in nature and is not barred by the running of the statute of limitations.[1] The defense of laches, however, may be employed to bar a claim for arrearages due under a child support order, where, as here, extraordinary facts or compelling circumstances are shown and the child's welfare is not otherwise jeopardized.[2] In order for the defendant to establish the defense of laches in an action of this nature, the defendant must prove the following elements:
1. Conduct on the part of the defendant, or on the part of one under whom he/she claims, giving rise to the situation of which the complaint is made;
2. The plaintiff, having had knowledge of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his/her rights by filing suit;
3. Lack of knowledge on the defendant's part that the plaintiff will assert the right on which he/she bases the suit; and
4. Injury or prejudice to the defendant in the event relief is accorded to the plaintiff or the suit is held not be barred.[3]
Although the defendant must prove each of the elements of laches, the elements are closely related and are somewhat dependent on each other.
The husband, without dispute, established the first and third elements of laches below. As to the first element, it was shown that the husband ceased supporting the parties' two minor children in August 1964 in violation of the divorce decree; as of that date, the wife clearly had a cause of action against the husband to enforce overdue child support payments. As to the third element, it was shown that the husband had no knowledge from 1964-93 that the wife ever intended to bring the present suit; the parties had limited contact during these thirty years, and at no time in the course of this period did the wife ever demand past-due child support payments from the husband.
The trial court concluded, however, that the husband failed to establish the second and fourth elements of laches. We turn now to a consideration of these two contested elements.

A
As to the second element of inexcusable delay, the trial court concluded that "the [w]ife reasonably believed that the [h]usband was dead for 16 of the 30 years in question [1964-93] and, with good cause, did not initiate an action to permit reconciliation between father and son, which ultimately proved to be unsuccessful." [Order under review at 11]. We cannot agree, however, that the wife is excused, as the trial court found, from filing the instant suit for the entire thirty-year period.
It was shown below that from 1964 to 1968, the wife failed to enforce the husband's *248 child support obligation, although she admittedly knew of the husband's whereabouts. The trial court, nonetheless, accepted the wife's testimony that she refrained from enforcing this obligation because "she was in fear of her [h]usband due to the fact that he was physically abusive during the marriage and the divorce was `nasty.'" [Order under review at 4]. Without more, however, this conclusory testimony does not constitute a legally cognizable excuse for failing to enforce the husband's support obligations on behalf of the children. Pyne v. Black, 650 So.2d 1073 (Fla. 5th DCA 1995) (laches defense upheld and wife's claim of physical abuse rejected as excuse to enforce child support obligations). Consequently, a period of time (1964-68) exists in which the wife inexcusably delayed in bringing her action; this being so, we do not pass on the wife's other reasons for further delays in this matter, as the husband has established the second element of laches by showing that the wife's initial four-year delay was inexcusable.[4]

B
As to the fourth element of prejudice to the husband, the trial court concluded that "the grounds for injury or prejudice claimed by the [h]usband are neither `extraordinary' or `compelling,'" that "none of the grounds establish sufficient injury or prejudice in fact or law," and that the "claim of prejudice or injury is not credible." [Order under review at 9]. We cannot agree with these legal conclusions because, based on the trial court's factual findings and the uncontradicted evidence, it is clear that the husband dramatically changed his position based, in part, on his reliance that the wife had abandoned any child support claim due to her thirty-year inaction in this case.
The "true test" in determining whether delay in bringing an action constitutes laches so as to bar the action is whether "the delay has resulted in injury, embarrassment, or disadvantage to any person and particularly to the person against whom relief is sought." Lightsey v. Lightsey, 150 Fla. 664, 8 So.2d 399, 400 (1942); see, e.g., Brumby v. Brumby, 647 So.2d 330 (Fla. 4th DCA 1994); Jimenez v. Jimenez, 309 So.2d 38 (Fla. 3d DCA 1975). The husband has remarried three times over the past thirty years (1964-93), has had three additional *249 children for whom he currently pays child support, and is now raising two children belonging to his new wife; moreover, he recently gave two expensive wedding gifts to the parties' adult son, to wit; a $28,000 condominium and an $11,000 ring. The husband expressly testified  and there is utterly no substantive or impeachment evidence to the contrary  that he would not have incurred such large financial obligations, especially the expensive wedding gifts, if he had known that he would have to pay for the enormous child support arrearages ultimately ordered in this case, namely $35,847 plus interest of $52,743 for a total of $88,590.84. Given the husband's limited financial resources, the large sum of child support arrearages which the husband has been ordered to pay, the uncontradicted assumption of substantial financial obligations during this time, part of which he would not, at least in part, have otherwise incurred, we cannot agree that no showing of any prejudice has been made by the husband.
Indeed, we are cited to no case in Florida or in any other jurisdiction in which a laches defense has been rejected where the wife, as here, has delayed thirty years before instituting proceedings for child support arrearages. Although delay alone does not in itself establish the requisite prejudice, a delay of this magnitude under the circumstances of this case lends some credence to the husband's claims of prejudice. See Brown v. Brown, 108 So.2d 492 (Fla. 2d DCA 1959). To face after thirty years  long after he has materially changed his position by getting on with his life and long after his children have attained majority so that the present action in no way affects their welfare  the enormous child support arrearage award made in this case [in which the interest exceeds the actual arrearages] strikes us as an injustice to the husband and a corresponding windfall to the wife. See Robinson v. State of Fla., Dept. of HRS, 473 So.2d 228, 229 (Fla. 5th DCA 1985). We certainly hold no brief for errant husbands who shirk their child support obligations, but under the circumstances of this case, the equities lie with the husband. See Brown, 108 So.2d at 492. We therefore conclude, contrary to the trial court's legal conclusion, that the husband in this case will be injured or disadvantaged, and therefore will be prejudiced, if the relief accorded the wife is allowed to stand. Lightsey, 8 So.2d at 400.

III
For the above-stated reasons, the final judgment under review is reversed, and the cause is remanded to the trial court with directions to deny the wife's petition to enforce the final judgment.
Reversed and remanded.
GERSTEN, J., concurs.
JORGENSON, Judge, dissenting.
I respectfully dissent. Although the wife may have failed to timely enforce her right to collect unpaid child support, the debtor father did not suffer legal prejudice from that delay.
A debtor parent who invokes the equitable defense of laches to avoid payment of accrued child support must demonstrate substantial prejudice.
[T]he delay required to render the defense of laches available `must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity either doubtful or impossible, as through loss or obscuration of evidence of the transaction in issue; or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted.'
Stephenson v. Stephenson, 52 So.2d 684, 686 (Fla. 1951) (citation omitted); see also Brumby v. Brumby, 647 So.2d 330 (Fla. 4th DCA 1994). Findings of such extraordinary prejudice have generally been limited to cases where the delinquent parent has stopped making payments in response to the custodial parent's interference with visitation rights. For example, a custodial parent who bargained for the termination of child support payments in exchange for the debtor parent's agreement to give up visitation rights could not later claim arrearages. Brown v. Brown, 399 So.2d 1083 (Fla. 1st DCA 1981). Likewise, a debtor parent would be prejudiced by an order to pay accrued arrearages *250 after he involuntarily gave up his efforts to gain custody of his children and, because of the wife's delay in seeking arrearages, lost the only records that would support his custody claim. Wing v. Wing, 464 So.2d 1342, 1344 (Fla. 1st DCA 1985); see also Pyne v. Black, 650 So.2d 1073 (Fla. 5th DCA 1995) (debtor parent suffered legal prejudice from former wife's delay in seeking to collect arrearages where wife had prevented lawful visitation with child); Hoffman v. Foley, 541 So.2d 145 (Fla. 3d DCA 1989) (prejudice demonstrated in URESA action where wife prevented former husband from exercising visitation rights and from seeking change of custody by secreting children); Panganiban v. Panganiban, 396 So.2d 1156, 1157 (Fla. 2d DCA 1981) ("The classic example of this power to refuse to enforce accrued child support is where the custodial parent has refused to comply with the visitation provisions of the court order."). But see Brown v. Brown, 108 So.2d 492 (Fla. 2d DCA 1959) (debtor father who had given shares of business to sons, then sold that business to sons and retired in reliance upon former wife's implied agreement not to collect support arrearages, and had then remarried and acquired additional children demonstrated prejudice sufficient to establish laches).
The exceptional circumstances that support the defense of laches are simply not present in this case. At no point did the former wife interfere with the father's relationship with their two children; in fact, the record indicates that the mother tried to promote a reconciliation between the father and son. The father, in turn, never sought to enforce visitation rights or modify his support obligations. The father made personal life choices to 1) marry again three times; 2) father other children; 3) give his son the equity in a condominium and a ring as wedding gifts; and 4) assume certain business-related obligations. All of these choices, he claims, were based on his unfounded belief that he was somehow freed from his court-ordered obligation to pay the princely sum of $180 per month in child support. Each of the three times that the debtor father remarried; each time he chose to have other children; and each time he made a business decision he was fully aware of the court order that required him to provide for the two children he already had[5]. To relieve him of that obligation misconstrues the very nature of the duty of child support and is against strong public policy. "In all events the welfare of the child is paramount and in the absence of extraordinary facts or strongly compelling circumstances, the action or inaction of a parent will not give rise to a defense of laches barring enforcement of child support arrearages." Golden v. Lewis, 647 So.2d 979, 980 (Fla. 2d DCA 1994) (emphasis added) (delinquent father's charitable donations of a former residence and a restored automobile did not rise to level of prejudice necessary to establish laches); see also Bland v. Larsen, 97 Md. App. 125, 627 A.2d 79, 83 (father's claim that he remarried and had additional children because of former wife's inaction in seeking accrued support payments did not establish prejudice sufficient to support laches defense), cert. denied, 332 Md. 453, 632 A.2d 150 (1993); Papcun v. Papcun, 181 Conn. 618, 436 A.2d 282 (1980) (delinquent father's claim that he remarried and incurred debts in reliance on former spouse's failure to collect court-ordered payments did not establish legal prejudice).
Although it may present a financial burden for the father to pay the accrued support arrearage plus the substantial interest, that predicament is one of his own making. A court order required him to pay monthly support; had he simply set aside each child support payment as it became due, "he would not now find the ... accumulation of arrearages to constitute an intolerable lump sum for him to shoulder." Department of Health & Rehab. Servs. v. Lemaster, 596 So.2d 1117, 1118 (Fla. 2d DCA 1992).
I would affirm.

*251 ON REHEARING

HUBBART, Judge.
The wife has filed a motion for rehearing in which she contends that this court has, in effect, impermissibly reweighed the evidence in the record on appeal and substituted its judgment for the trial court in holding that the defense of laches was established as a matter of law by the husband in this case. We disagree and deny the motion for rehearing.
1. Admittedly, the first and third elements of the laches defense were established below as a matter of law, namely: (a) the fact that the wife had a claim for child support enforcement thirty years ago when the husband ceased making support payments, and (b) the fact that the husband had utterly no knowledge, at anytime during the subsequent thirty-year period [1964-93], that the wife intended to belatedly file a claim for child support arrearages, despite contact between the two during this period. Indeed, the trial court made no finding to the contrary, and the wife concedes that these two elements were established below.
2. The second element of the laches defense, we have held, was also established below as a matter of law, namely, the fact that the wife had knowledge of the husband's non-support and was guilty of not asserting her rights at any time during the ensuing thirty-year delay. Indeed, the trial court found a legally sufficient excuse for only a portion of the thirty-year delay by concluding that "the [w]ife reasonably believed that the [h]usband was dead for 16 of the thirty years in question [1964-93] and, with good cause, did not initiate an action to permit reconciliation between father and son, which ultimately proved to be unsuccessful." [Order under review at 11]. Even if true, which we have serious doubts about, this only excuses the delay in filing suit between 1968-85, when the wife allegedly thought the husband was dead, and between 1985-90 after which the reconciliation efforts between the father and son broke down. It does not and cannot excuse the delay in failing to file suit between 1990-93, as, indeed, no excuse was ever offered below for failing to file suit during this period.
Moreover, we concluded that the testimony offered by the wife to excuse the delay in failing to file suit between 1964-68 was entirely conclusory and was therefore legally insufficient. The wife testified that "she was in fear of her [h]usband due to the fact that he was physically abusive during the marriage and the divorce was `nasty.'" [Order under review at 4]. Aside from this conclusory statement, however, she gave no testimony whatever concerning the nature of the alleged physical abuse or where or when it occurred or why the divorce was otherwise "`nasty'"; indeed, in the original divorce, there was no showing whatever that the husband had ever been physically abusive to the wife. Absent such additional evidence, we concluded that such a bare accusation of abuse could neither establish such abuse as a fact nor excuse the subject delay.
We realize that physical abuse of a wife by a husband is not to be taken lightly, but our law has long required more than a conclusory accusation of such abuse before a trial court may legally make a factual finding to that effect. Indeed, in Pyne v. Black, 650 So.2d 1073 (Fla. 5th DCA 1995), the court sustained a trial court order which found that laches barred an action by the wife to collect child support arrearages based on an unexcused twelve-year delay in bringing the action in which the husband was prejudiced. In particular, the court approved the trial court's conclusion that the wife "has not offered a reasonable explanation for her delay in bringing this action to collect support." Id. at 1075. As in the instant case, the excuse given by the wife for failing to file such action was that "Pyne [the wife] testified she was afraid of Black [the husband] because he had been `abusive' to her in the past." Id. at 1080 (Sharp, J., concurring in part, dissenting in part). This conclusory accusation was quite properly deemed legally insufficient to establish such abuse or to justify the twelve-year delay in filing the subject suit; similarly, in the instant case the wife's conclusory accusation that the husband had been abusive to the wife cannot, without more, establish such abuse or justify the delay in failing to file suit from 1964-68.
*252 3. Finally, the fourth element of laches was established below as a matter of law, namely, the fact that the husband would be prejudiced if the relief sought by the wife were granted. This is so because the record shows, without contradiction, that the husband got on with his life over the past thirty years and dramatically changed his position based, in part, on his reliance that the wife had long given up any claim for child support arrearages. Indeed, the husband expressly testified that he would not, among other things, have given the parties' adult son a $28,000 condominium and an $11,000 ring as wedding gifts if he had known that the wife would soon thereafter demand that he pay $38,000 in child support arrearages plus $52,743 in interest. The husband is undeniably a man of limited means and understandably would not have spent his limited resources in this manner had he not believed that the wife had long ago abandoned the huge support claim for the adult children which the wife now asserts. Our extensive review of the record reveals that the husband's testimony was in no way contradicted or impeached by any other evidence adduced below. It is, of course, well settled
"that there is a vast difference between a finding based upon conflicting testimony and evidence and a finding based upon uncontradicted testimony and evidence. In those instances where the testimony and evidence are in conflict, it is the duty of the trier of fact[] to reconcile the differences, and if unable to do so, then to select that testimony and evidence that he [or she] feels is worthy of belief and that is more probable and reasonable under the circumstances. However, where the testimony and evidence are uncontradicted [as here], a finding contrary to the manifest weight of such testimony and evidence could not be said to be supported by competent substantial evidence... . Findings wholly inadequate or not supported by the evidence will not permitted to stand."

Caranci v. Miami Glass & Eng'r. Co., 99 So.2d 252, 254 (Fla. 3d DCA 1957) (emphasis added).
Based on the above-stated analysis, the wife's motion for rehearing is
Denied.
GERSTEN, J., concurs.
JORGENSON, Judge, dissenting.
I adhere to the views expressed in my prior dissent.
NOTES
[1] Frazier v. Frazier, 616 So.2d 575, 579 (Fla. 2d DCA 1993); Fowhand v. Piper, 611 So.2d 1308, 1311 (Fla. 1st DCA 1992); Popper v. Popper, 595 So.2d 100, 103-04 (Fla. 5th DCA), rev. denied, 602 So.2d 942 (Fla. 1992); Bloom v. Bloom, 414 So.2d 1153, 1155 (Fla. 3d DCA 1982); Armour v. Allen, 377 So.2d 798, 800-01 (Fla. 1st DCA 1979).
[2] Department of HRS v. Thomas, 477 So.2d 1053, 1055 (Fla. 5th DCA 1985), rev. denied, 488 So.2d 829 (Fla. 1986); Robinson v. State of Fla., Dept. of HRS, 473 So.2d 228, 229 (Fla. 5th DCA), appeal dismissed, 478 So.2d 53 (Fla. 1985); Wing v. Wing, 464 So.2d 1342, 1344 (Fla. 1st DCA 1985).
[3] Van Meter v. Kelsey, 91 So.2d 327 (Fla. 1956); Wing v. Wing, 464 So.2d 1342, 1344 (Fla. 1st DCA 1985).
[4] The writer of this opinion, speaking solely for himself, is of the view that the wife's reasons for delaying the action for 1968-93 are also legally inexcusable. As to the delay between 1969-85, the trial court found that "[i]n 1969, the [w]ife attempted to locate the [h]usband through an agency in order to seek past due child support," but "received information which led her to believe that the [h]usband was dead," so that "the [w]ife did not know that the [h]usband was alive until 1985." [Order under review at 4]. There is no evidence in the record, however, that the wife ever received information from an agency that the husband was dead, and, accordingly, the trial court's factual finding to that effect must be rejected as not supported by substantial competent evidence; although the wife testified that she hired an agency to locate the husband, there was no evidence adduced as to the agency's findings. Moreover, the wife's testimony that she thought the husband was dead from 1969-85, without any showing as to what she based this belief on, cannot constitute a legally cognizable excuse for the wife's failure to file the instant action against the husband from 1969-85. See Lynch Austin Realty, Inc. v. Engler, 647 So.2d 988, 991 (Fla. 2d DCA 1994); Stewart v. Stewart, 581 So.2d 246 (Fla. 3d DCA), rev. denied, 591 So.2d 184 (Fla. 1991); Randy Int'l Ltd. v. American Excess Corp., 501 So.2d 667, 670 (Fla. 3d DCA 1987); Hamilton v. Title Ins. Agency of Tampa, Inc., 338 So.2d 569, 572 (Fla. 2d DCA 1976).

As to the delay in filing the action from 1985-93, the trial court found that from 1985-90 the wife "decided to forebear against the [h]usband at the request of her son to encourage reconciliation" [between the husband and the son], [order under review at 6], "which ultimately proved to be unsuccessful." [Order under review at 11]. The husband, however, at no time asked the wife for this forbearance; it was the parties' son who made this request. Moreover, these reconciliation efforts almost immediately collapsed after a five-week trial period when the husband fired the son from the husband's tile business in Palm Beach in 1985 and the son returned to Miami; these efforts were revived in 1989-1990, but were equally unsuccessful. Under these circumstances, the wife's decision to forbear against the husband from 1985-90 to encourage a reconciliation between the husband and son cannot possibly constitute a legally valid excuse for failing to file suit during this period. See Brown v. Brown, 108 So.2d 492, 494 (Fla. 2d DCA 1959). Moreover, this otherwise invalid excuse does not even purport to explain why the wife failed to file suit from 1990-93, after the son's last reconciliation effort with the husband had long since failed; indeed, the trial court made no finding to the contrary.
[5] The father's extravagant wedding gifts to his son should not excuse his many years of financial neglect. See Bloom v. Bloom, 414 So.2d 1153, 1156 (Fla. 3d DCA 1982) (extra funds sent to family as gifts did not demonstrate prejudice to debtor father).