MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 146
Docket:       Cum-15-427
Argued:       June 9, 2016
Decided:      September 20, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

CATHERINE E. BROCHU

v.

RICHARD A. MCLEOD

MEAD, J.

[¶1]  Catherine E. Brochu, formally known as Catherine McLeod, appeals from an order of the District Court (Portland, *Eggert, J.*) granting, based on the affirmative defense of laches, Richard A. McLeod's motion to dismiss Brochu's motion to enforce nearly forty years' overdue child and spousal support payments.  On appeal, Brochu contends that the court erred by (1) concluding that laches is a viable defense in child or spousal support cases; (2) finding that the elements of laches were satisfied; and (3) interpreting the parties' settlement agreement to limit the term of spousal support to eighteen months. We vacate the judgment.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the court's judgment, the record supports the following facts.  *Young v. Lagasse*, 2016 ME 96, ¶ 4, --- A.3d ---.  Brochu and McLeod married on November 4, 1970.  They had two children, born in 1970 and 1972.  On June 6, 1977, Brochu and McLeod executed a separation agreement, which provided that McLeod "shall pay to [Brochu], for her support, the sum of $160 per month during the joint lives of the parties, and so long as [Brochu] does not remarry or cohabit for a maximum of eighteen months from the date of this Agreement."  Brochu did not remarry or cohabitate during the eighteen months following the agreement.  From the date of the separation agreement in 1977 to present, McLeod has never made a child or spousal support payment.

[¶3]  McLeod went into hiding in 1977, shortly after he and Brochu had executed the separation agreement.  At that time, McLeod was in the United States Marine Corps.  Brochu called his military base in an attempt to locate him, but was advised that McLeod was absent without leave.  Brochu also consulted some of McLeod's family members about his whereabouts, but they too did not know where he had gone.

[¶4]   On August 9, 1979, the court issued a divorce judgment incorporating the settlement agreement.[1]   Brochu remarried in October of that year and legally changed her sons' surnames to match her new husband's surname.  Brochu completely stopped looking for McLeod after the divorce in 1979.

[¶5]   In 1996, the United States Marine Corps instituted an action against McLeod for his unauthorized absence dating back to 1977, and he was given a bad-conduct discharge as a result.  There is no indication that Brochu was aware of McLeod's trial or whereabouts in 1996.

[¶6]  In 2014, the parties' son, then forty-two years old, asked Brochu for information about his biological father.  Brochu conducted a Google search of McLeod's name and in less than five minutes was able to find McLeod's address in California.

[¶7]  On March 30, 2015, Brochu filed a motion to enforce the nearly forty years' overdue child and spousal support payments.  McLeod filed a motion to dismiss on July 6, 2015, asserting the affirmative defense of laches,

---

[1] The divorce action was served by publication due to McLeod's unknown whereabouts.

4

among other things.[2]  The District Court held a hearing on July 29, 2015, at which both Brochu and McLeod testified.

[¶8]  The following exchange occurred regarding Brochu's efforts to locate McLeod over the years:

> THE COURT:  Let me cut to the chase.  Were you able to learn during the late 1970s and into the '80s while your children were still living with you where [McLeod] was?
> [BROCHU]:  No, I had no idea where he was . . .
> THE COURT:  And what efforts did you make after the divorce was granted to find out where he was?
> [BROCHU]:   Well,  after  the  divorce . . . it  just  became . . . a non-issue.  Again, at that time I still didn't know how to go about finding him, even beginning to know where he could possibly be.
> THE COURT:  So you were just willing to move along within life knowing that you had your two kids and you were going to have to provide for them?
> [BROCHU]:  That—I accepted that, yes.
>
> . . . .
>
> [MCLEOD'S ATTORNEY]:  So after the divorce was finalized in 1979 to 2014, you in fact made no effort to locate [McLeod]?
> [BROCHU]:  No, I didn't.

Brochu also explained that she thought she lost any right to pursue child support once both of her children had attained the age of majority in 1990.

---

[2]  In his motion to dismiss, McLeod argued, as he does on appeal, that Brochu's claim was also barred by the defenses of waiver and equitable estoppel.  The trial court's decision on the motion observed in passing that those defenses were "possibly" established, but the court did not rule on the issue directly.  Because we vacate the judgment and remand for further proceedings, it would be premature to address the issue in advance of the trial court's full consideration of it.

After locating McLeod in 2014, however, she soon consulted an attorney and instituted this action against McLeod.

[¶9] McLeod's testimony at the hearing was limited. McLeod contended that he never paid child or spousal support because Brochu had left him and he was unable to find her or their children. McLeod also testified that the only time he looked for their children was in the 1970s. McLeod offered no information as to his assets or income; whether he would have done anything differently had he known that he would ultimately have to pay the child support arrearages; or whether he had any additional children.

[¶10] At the hearing, the court took the defense of laches under advisement. With regard to the interpretation of the parties' settlement agreement, the court concluded that the agreement did not require spousal support payments for life, instead interpreting the language to limit the payments to a term of eighteen months. The court reasoned that "[t]here was absolutely no intention that there be lifetime alimony. There are meant to be 18 months of spousal support, after a short marriage, and that even wouldn't be paid if one of them died or if she remarried or cohabitated during that 18[-]month period."

6

[¶11] With regard to the amounts owed by McLeod, the principal sum of the child support arrears is $29,200, and the spousal support owed is about $3,000. Brochu contends that, after assessing both pre- and post-judgment interest, McLeod owes her over $400,000.

[¶12] In its order dated August 3, 2015, the court granted McLeod's motion to dismiss, concluding that (1) laches is available as a defense in child support arrearage cases, and (2) the elements of laches were satisfied. Brochu appealed.

## II. DISCUSSION

[¶13] "Laches is negligence or omission seasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right." *Dep't of Human Servs. v. Bell*, 1998 ME 123, ¶ 7, 711 A.2d 1292 (quotation marks omitted). We review de novo whether the doctrine of laches bars a claim. *Cloutier v. Turner*, 2012 ME 4, ¶ 11, 34 A.3d 1146.

A.      Whether Laches Applies to Child Support Arrearages

[¶14]  Brochu contends that the court erroneously granted McLeod's motion to dismiss because laches is not a viable defense to delinquent child support obligations.  We have, in some instances, assumed *arguendo* that laches could apply to claims for child support arrearages, *see id.*, but we have never conclusively answered this question, *see, e.g.*, *Estate of Sawyer*, 2000 ME 3, ¶ 7 n.2, 742 A.2d 943 ("Because we find this action time-barred . . . we need not address the laches issue."); *Glew v. Glew*, 1999 ME 114, ¶ 14, 734 A.2d 676 ("Assuming that laches may apply to defeat a claim for child support arrearage, [the defendant] has failed to establish the requisite elements to bar [the] action."); *Bell*, 1998 ME 123, ¶ 7, 711 A.2d 1292 ("Assuming laches may be available to defeat a claim for a child support arrearage brought within the limitations period for paternity actions, [the defendant] has failed to prove the elements required for its applicability in this case." (footnote omitted)); *Trimble v. Comm'r, Dep't of Human Servs.*, 635 A.2d 937, 939 (Me. 1993) ("The question of whether laches, waiver, or estoppel can defeat an action for child support arrearages is one that we have declined to answer in two recent cases."); *Schneider v. Dep't of Human Servs.*, 617 A.2d 211, 212 (Me. 1992) ("[W]e recently left unanswered the question

8

whether the defense of laches can defeat an action for child support arrearage.").

[¶15] We announce today that the doctrine of laches does not apply to child support arrearages.

[¶16] There are several rationales underlying the inapplicability of laches to child support obligations. First, child support arrearages are money judgments. *Carter v. Carter*, 611 A.2d 86, 87-88 (Me. 1992). We have previously explained that "the right to the payment of [child] support becomes vested as it becomes due," *id.* at 87, and that a child support order is "essentially a judgment in monthly installments," *id.* (quotation marks omitted). Child support arrearages, therefore, are not subject to a statute of limitations.[3] *See Cloutier*, 2012 ME 4, ¶ 9, 34 A.3d 1146; *Carter*, 611 A.2d at 87-88 & n.2.

[¶17] As the United States Supreme Court observed, "[s]tatutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of*

---

[3] Money judgments are, however, subject to a statutory presumption of payment after twenty years. 14 M.R.S. § 864 (2015).

*R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944). In the context of enforcement of money judgments, however, these considerations are, more often than not, incidental, if relevant at all. By virtue of its status as a money judgment, a child support arrearage is not subject to the defense of laches. *See Lombardi v. Lombardi*, 862 N.E.2d 436, 442 (Mass. App. Ct. 2007) ("Because [the husband's] failure to make child support payments became vested as judgments by operation of law, the defense of laches is not available to him." (alteration in original) (quotation marks omitted)); *Hammond v. Hammond*, 14 P.3d 199, 201-203 (Wyo. 2000) (holding that laches does not apply to unpaid child support because "child support payments are judgments arising by operation of law" (quotation marks omitted)); *Dep't of Revenue, Child Support Enf't Div. v. Valdez*, 941 P.2d 144, 152 (Alaska 1997) (concluding that the equitable defense of laches is unavailable in a child support collection case because child support arrearages are money judgments and therefore result in disputes that are legal rather than equitable in nature).

[¶18] Second, a growing number of jurisdictions—including California, Massachusetts, Indiana, New York, Pennsylvania, and Vermont—have

10

similarly concluded that the doctrine of laches does not apply to child support arrearage cases.[4]

[¶19]  Finally, and perhaps most importantly, compelling public policy considerations support our conclusion.  Allowing the assertion of laches in child support arrearage cases has the inevitable dual consequence of financially rewarding a parent for shirking his or her obligation to the child and penalizing the child for a parent's delay in seeking support.  The child's needs are the primary focus of an order awarding child support, not the diligence of the parent.

---

[4]  *See, e.g.*, *In re Marriage of Boswell*, 171 Cal. Rptr. 3d 100, 104 (Cal. Ct. App. 2014) ("[T]he defense of laches only applies to child support owed to the state."); *Trent v. Trent*, 829 N.E.2d 81, 87 (Ind. Ct. App. 2005) ("This court has held the doctrine of laches simply does not apply to child support cases." (quotation marks omitted)); *Knaus v. York*, 586 N.E.2d 909, 914 (Ind. Ct. App. 1992) (same); *Lombardi v. Lombardi*, 862 N.E.2d 436, 442 (Mass. App. Ct. 2007) ("Because [the husband's] failure to make child support payments became vested as judgments by operation of law, the defense of laches is not available to him." (alteration in original) (quotation marks omitted)); *Cook v. Miller*, 771 N.Y.S.2d 779, 779-80 (N.Y. App. Div. 2004) (noting that New York statutes prevent courts from considering laches and that "[t]he purpose of those provisions is to preclude[] forgiveness of child support arrears to ensure that respondents are not financially rewarded for failing either to pay the order or to seek its modification" (quotation marks omitted) (second alteration in original)); *Christianson v. Ely*, 838 A.2d 630, 638 (Pa. 2003) ("[L]aches has no application in support or paternity cases." (quotation marks omitted)); *Lyon v. Lyon*, 466 A.2d 1186, 1188 (Vt. 1983) ("Defendant next argues that plaintiff is barred from recovering arrearages by her laches and/or the doctrine of equitable estoppel.  However, we hold that these affirmative defenses are not available in an action brought to secure enforcement of a child support order.").

B.      Whether Laches Applies to Spousal Support Arrearages

[¶20]   In contrast to child support arrearages, however, we conclude that the doctrine of laches is a viable defense in spousal support arrearage cases.

[¶21]   Our refusal to apply the same broad rule is principally rooted in both the practical and public policy considerations that differentiate child support from spousal support obligations.    Pursuant to 19-A M.R.S. § 1653(12)(A) (2015), a child support order typically terminates when the child "[a]ttains 18 years of age."   Unlike child support orders, however, spousal support orders can, in some instances, be awarded for much longer durations, potentially the lifetime of the payee.  *See* 19-A M.R.S. § 951-A(2)(A) (2015).  Because the duration of a child support order is necessarily limited, but that of a spousal support order is not, spousal support obligations have a greater potential to accrue to exorbitant amounts over extended periods of time.

[¶22]   Additionally, and perhaps more importantly, there are markedly different public policy considerations concerning whether laches should apply to overdue spousal support obligations as opposed to child support arrearages.   As we have discussed, one of the principal considerations in

disallowing the application of laches to claims involving child support arrearages is that the child should not be penalized for his or her parent's nonfeasance with regard to seeking the overdue support. In claims for spousal support arrearages, however, it is the same person who had the onus of seeking enforcement who suffers the consequences of a failure to seek enforcement in a timely fashion.

C.      Laches and Pre- and Post-Judgment Interest

[¶23]  We turn next to the related determination of whether laches may apply to pre- and post-judgment interest in both child and spousal support arrearage cases. We have previously made clear that the pre- and post-judgment interest statutes, *see* 14 M.R.S. §§ 1602-B, 1602-C (2015), are applicable to child support arrearages, *Walsh v. Cusack*, 2008 ME 74, ¶ 4, 946 A.2d 414, and to spousal support arrearages, *Brown v. Habrle*, 2010 ME 72, ¶ 19, 1 A.3d 401. Pursuant to sections 1602-B(5) and 1602-C(2), "[o]n petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section be fully or partially waived." A showing of good cause, therefore, can avert the assessment of both pre- and post-judgment interest.

[¶24]    Our decision that laches is inapplicable to child support arrearages is limited to the principal sum of the child support arrearages, and therefore does not preclude the application of laches to the accumulation of both pre-and post-judgment interest.    With regard to spousal support arrearages, we conclude that the doctrine of laches may be applied to both the principal sum and any interest that has accrued thereon.

[¶25]    In sum, we conclude that the doctrine of laches may not be asserted as a defense to claims for the principal sum of child support arrearages, but may be asserted as a defense to the principal of overdue spousal support. *See id.*

D.    Whether the Court Properly Applied the Doctrine of Laches to the Spousal Support Arrearages

[¶26]    Having concluded that laches may be asserted as a defense to spousal support arrearages, the next question is whether the court properly concluded that McLeod satisfied both elements of laches.

[¶27]    With regard to the first element of laches, the trial court found that Brochu's thirty-five-year delay was unreasonable because "[t]he possibility of locating [McLeod] without undue effort existed well prior to 2014."    At the hearing, Brochu admitted that she made no effort to find McLeod from 1979 until 2014, when she searched his name on Google and

14

found him within minutes. Brochu explained that she did not look for McLeod because "after the divorce[] . . . it just became . . . a non-issue" and because she "didn't know how to go about finding him."

[¶28] The court noted that because McLeod was tried in 1996 for being AWOL from the Marines, his location was discoverable from at least that point forward. Indeed, with the advent of internet search engines like Google shortly after that, coupled with the sheer ease with which Brochu obtained McLeod's contact information upon actually trying, the court found that Brochu was complacent and therefore unreasonable in not undertaking any effort to locate McLeod.

[¶29] The court did not err in concluding that Brochu's thirty-five-year delay was unreasonable. The first few years—and potentially even the first decade—of Brochu's delay in seeking enforcement of the judgment were undoubtedly justified because McLeod's whereabouts remained unknown despite Brochu's efforts to find him, but after 1979, as the court found, she made absolutely no effort to look for him. Although it is uncertain whether she would have found McLeod if she had looked before 1996, from at least that point forward the U.S. government knew of his whereabouts and presumably could have relayed that information to her. Moreover, the ease

with which Brochu found McLeod's information upon actually looking supports the court's finding that Brochu unreasonably delayed seeking enforcement for the nearly twenty-year period between 1996 and 2014.

[¶30]  With regard to the second element of laches, the court concluded that Brochu's delay prejudiced McLeod because "[e]nsuing prejudice necessarily follows upon the passage of so very many years, exacerbated by the continuing accrual of interest far beyond the support ordered."  The court's finding, however, directly conflicts with our holding in *Schneider v. Dep't of Human Servs.* that "[l]aches cannot be predicated on delay alone." 617 A.2d 211, 212 (Me. 1992).

[¶31]  In support of its prejudice finding, the court cited the following from *Dean v. Dean*, 665 So. 2d 244, 249 (Fla. Dist. Ct. App. 1995) (citations omitted):

> Indeed, we are cited to no case in Florida or in any other jurisdiction in which a laches defense has been rejected where the wife, as here, has delayed thirty years before instituting proceedings for child support arrearages.  Although delay alone does not in itself establish the requisite prejudice, a delay of this magnitude under the circumstances of this case lends some credence to the husband's claims of prejudice.  To face after thirty years—long after he has materially changed his position by getting on with his life and long after his children have attained majority so that the present action in no way affects their welfare—the enormous child support arrearage award made in this case [in which the interest exceeds the actual arrearages]

strikes us as an injustice to the husband and a corresponding windfall to the wife. We certainly hold no brief for errant husbands who shirk their child support obligations, but under the circumstances of this case, the equities lie with the husband.

[¶32] Although there are some similarities between *Dean* and the instant case—namely the length of the delay and that the children are now well beyond the age of majority—*Dean* is nonetheless distinguishable because the facts in that case provided an ample basis for a prejudice finding, whereas here there is no such basis.

[¶33] In *Dean*, a mother sought child support arrearages in 1993, nearly thirty years after the debt started to accrue in 1964. 665 So. 2d at 245. The father asserted a laches defense. *Id.* In assessing whether the mother's unreasonable delay prejudiced the husband, the court examined whether the father had changed his position based on a reliance that the mother had abandoned any child support claim. *See id.* at 248. The court found that the father, in fact, was prejudiced by the thirty-year delay, reasoning that

> [t]he husband has remarried three times over the past thirty years (1964-93), has had three additional children for whom he currently pays child support, and is now raising two children belonging to his new wife; moreover, he recently gave two expensive wedding gifts to the parties' adult son, to wit; a $28,000 condominium and an $11,000 ring. *The husband expressly testified—and there is utterly no substantive or impeachment evidence to the contrary—that he would not have incurred such large financial obligations, especially the expensive*

> *wedding gifts, if he had known that he would have to pay for the enormous child support arrearages* ultimately ordered in this case, namely $35,847 plus interest of $52,743 for a total of $88,590.84. Given the husband's limited financial resources, the large sum of child support arrearages which the husband has been ordered to pay, the uncontradicted assumption of substantial financial obligations during this time, part of which he would not, at least in part, have otherwise incurred, we cannot agree that no showing of any prejudice has been made by the husband.

*Id.* at 248-49 (emphasis added). In short, the *Dean* court found that the thirty-year delay *coupled with* the father's assertions satisfied the prejudice element of laches.

[¶34] In this case, unlike in *Dean*, McLeod offered no testimony about anything he would or would not have done differently.[5] McLeod's testimony at the motion hearing was extremely limited; there was no testimony about many pertinent matters, such as (1) any obligation that he would not have incurred had he known that he would ultimately have to pay the child and spousal support arrearages; (2) his current living and family circumstances, including whether he had any additional children; or (3) his current financial

---

[5] The inquiry in *Dean* into the father's financial decisions and circumstances to assess any prejudice he may have suffered due to the delay is consistent with our precedents stating that the defendant must have undertaken some action or inaction that he or she otherwise would not have. *Trimble v. Comm'r, Dep't of Human Servs.*, 635 A.2d 937, 939 (Me. 1993) ("The record is devoid of any evidence showing the kind of detrimental reliance, change of position, or prejudice to the payor spouse resulting from the payee spouse's delay in requesting full payment of the child support owed her to constitute laches."); *Carter v. Carter*, 611 A.2d 86, 87 (Me. 1992) ("[T]he doctrine of laches requires a showing that the delay caused prejudice to him, and defendant has not shown that he undertook any obligation that he would have forsaken.").

status, including any assets and income. In fact, when McLeod was asked about his current work status by Brochu's attorney, McLeod's attorney objected and the court sustained the objection. Shortly thereafter, McLeod's attorney attempted to recall McLeod as a witness so that he could be asked about his income and work status, but Brochu's attorney objected and the additional testimony was excluded.

[¶35] Thus, unlike the extensive testimony in *Dean* about the father's current financial obligations and the obligations that he contended he would not have undertaken had he known that he would have to pay child support arrearages, the instant case involves no testimony about prejudice to McLeod. Aside from the accumulation of interest, there is no evidentiary basis in the record for any other ground of prejudice. *Dean* is therefore readily distinguishable as persuasive authority because here the passage of time and accumulation of interest has not been coupled with any assertion of prejudice.

E. Interpretation of Settlement Agreement

[¶36] "Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (quotation marks omitted). The interpretation of a settlement agreement, and the

determination of whether it is ambiguous, is reviewed de novo as with contract interpretation. *Flaherty v. Muther*, 2013 ME 39, ¶ 17, 65 A.3d 1209.

[¶37]  The settlement agreement here states, in pertinent part, that McLeod "shall pay to [Brochu], for her support, the sum of $160 per month during the joint lives of the parties, and so long as [Brochu] does not remarry or cohabit for a maximum of eighteen months from the date of this Agreement."

[¶38]  The court concluded that the settlement agreement did not entitle Brochu to spousal support payments for life, saying that "the court is not persuaded by [Brochu's] argument, and finds that, rather than lifelong spousal support, the provision entitles [Brochu] to monthly spousal support for a period of eighteen months, so long as during that period neither party dies and [Brochu] does not remarry or cohabit."

[¶39]  On appeal, "[i]f we determine that a contract is unambiguous, then its interpretation is [] a question of law.  On the other hand, if the contract is ambiguous, then its interpretation is a question of fact for the factfinder, in which case we review the trial court's conclusion for clear error." *Testa's, Inc. v. Coopersmith*, 2014 ME 137, ¶ 11, 105 A.3d 1037 (quotation marks and alteration omitted).  In the latter case, the trial court's task is to

"determine the intent of the parties in entering [the] contract" using extrinsic evidence, if appropriate. *Estate of Barrows*, 2008 ME 62, ¶ 3, 945 A.2d 1217 (quotation marks omitted); *see Estate of Barrows*, 2006 ME 143, ¶ 23, 913 A.2d 608.

[¶40]  The court's reading of the settlement agreement implies a comma between the words "cohabit" and "for," illustrated in the following: McLeod "shall pay to [Brochu], for her support, the sum of $160 per month during the joint lives of the parties, and so long as [Brochu] does not remarry or cohabit*[,]* for a maximum of eighteen months from the date of this Agreement."  Without this comma, there is ambiguity as to the term of the award, and the court therefore properly looked to the fact that Brochu and McLeod's marriage lasted seven years to inform its interpretation.[6] *See id.*

[¶41]  It is quite unlikely that after a relatively short marriage the parties contemplated a lifetime spousal support award.  The court did not clearly err in interpreting the settlement agreement as establishing a spousal support award that was limited to an eighteen-month period upon the conditions that Brochu neither remarry nor cohabitate during that time.

---

[6]  Notwithstanding a settlement agreement, the current spousal support guidelines (which were not in effect at the time of the settlement agreement and divorce judgment in this matter) provide that a rebuttable presumption exists against the award of general spousal support if the marriage lasted less than ten years.  *See* 19-A M.R.S. § 951-A(2)(A)(1).

## III. CONCLUSION

[¶42] Although the court did not err in determining that the provisions of the settlement agreement, as incorporated in the divorce judgment, limit Brochu to a maximum of eighteen months of spousal support, we vacate the order of dismissal to the extent that the court's conclusions are founded upon the application of the doctrine of laches. On remand, the court may conduct further hearings, or rehearings, as it may deem appropriate, to consider the issues of support arrearages, interest, and the defense of laches consistent with our decision today.

The entry is:

> Order of dismissal vacated. Remanded to the District Court for further proceedings consistent with this decision.

---

**On the briefs and at oral argument:**

Joe Lewis, Esq., Port City Legal, Portland, for appellant Catherine E. Brochu

Brett N. Gabor, Esq., Hallett, Zerillo & Whipple P.A., Portland, for appellee Richard A. McLeod