MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 132
Docket:      Pen-20-3
Argued:      September 17, 2020
Decided:     November 10, 2020

Panel:       GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

FRANCES QUIRK

v.

JOHN E. QUIRK SR.

CONNORS, J.

[¶1]  Forty years is a long time.  But because a successful laches defense requires more than delay alone, and because the factual findings of the trial court rejecting the defense in this matter are supported by competent evidence, we affirm the judgment of the District Court (Bangor, *Jordan, J.*) which, with interest and attorney fees, approaches $400,000.

## I.  BACKGROUND

[¶2]  In October 2018, Frances Quirk filed a motion to enforce her divorce judgment dated January 8, 1973, alleging that her ex-husband, John E. Quirk,[1] was obligated to pay her forty-five dollars per week in spousal support.  She

---

[1] John is sometimes referred to as John E. Quirk Sr. in the record, but his briefs and pleadings in the trial court do not use the suffix and there was testimony that he and his son do not actually share the same name.

alleged that he had made no payment since at least January 1, 1977, and that he owed her $97,875 plus interest.[2] John opposed the motion and filed an answer asserting affirmative defenses, including laches. He subsequently filed a motion to modify his spousal support obligation and, by later amendment, clarified that he was asking the court to terminate spousal support and any obligation he had pursuant to the 1973 judgment to provide health insurance for Frances. Frances also filed a motion to modify, seeking an increase in spousal support from forty-five dollars to three hundred dollars per week.

[¶3] Discovery disputes ensued. In March 2019, John sought to avoid having his deposition taken, stating that he had recently undergone an evaluation with a neuropsychologist who concluded that he "suffers from dementia and is not someone who could competently provide information within the context of an oral deposition." Nevertheless, he noted that the neuropsychologist believed that he retained "sufficient cognitive capacity . . . to work with counsel to provide reliable information in written form." After

---

[2] Although the 1973 judgment was never admitted in evidence, the transcript suggests that the court took judicial notice of the document and neither party contests its validity on appeal. Because the 1973 judgment was entered in the Superior Court (Penobscot County, *MacInnes, J.*), Frances originally filed her motion to enforce in that court; the matter was subsequently transferred to the District Court by agreement of the parties. Additionally, although the court did not make any findings on the parties' ages or marriage, the parties agree—and the record supports—that Frances and John were both born in 1931 and they were married on September 27, 1952.

holding a conference with the parties, the court ordered the deposition "to go forward as scheduled."

[¶4] John subsequently filed a motion for protective discovery order, reiterating his request that he not be compelled to "sit for a video-taped oral deposition" due to his alleged cognitive difficulties. *See* M.R. Civ. P. 26(c). He noted that he was "not seeking an order prohibiting . . . any form of discovery," but expressed concern that his counsel would not "have the ability to stop questions on the grounds of relevance." Once again, the court ordered the deposition to "proceed as scheduled" and noted that "[c]oncern about controlling a witness and preventing the generating of evidence which may have collateral application are not proper grounds for blocking a deposition."

[¶5] Finally, in April 2019, Frances sought the court's assistance with respect to a third discovery dispute. She asserted that John's counsel had objected to John answering any questions during his deposition about his past or present activities on the grounds that such questions would not lead to relevant evidence. The docket reflects that the court held a conference regarding the dispute, but there is no record of the result of that conference.

[¶6] A hearing on Frances's and John's motions was eventually held on September 24, 2019. The court heard testimony from several witnesses,

4

including the parties, some of their children, John's current wife, and the neuropsychologist who had evaluated John. After receiving post-trial briefing and proposed judgments, the court entered a judgment granting Frances's motion to enforce, granting John's motion to modify, and denying Frances's motion to modify.

[¶7] In its judgment, the court found that John had not made payments since at least January 1, 1977, that Frances had not pursued the payments because of John's "abusive, demeaning, and threatening" behavior, and that John had not been prejudiced by Frances's delay in enforcing the obligation. The court found Frances's calculation of the amount of spousal support and interest persuasive and awarded her $367,590. It also awarded Frances $18,029.74 in attorney fees based on its findings that John's "pretrial tactics significantly added to the cost of" the litigation and that he had a "far greater ability to absorb the costs of the litigation." The court did, however, grant John's motion to modify by terminating his spousal support obligation and his obligation to provide health insurance to Frances, and denied Frances's motion to modify on the basis that "it would be unfair to order an increase in spousal support given the parties' advanced ages and the length of time of the spousal support award."

[¶8] John filed a motion for further findings, which the court summarily denied. *See* M.R. Civ. P. 52(b). John then filed this appeal. *See* M.R. App. P. 2B(c)(2).

## II. DISCUSSION

[¶9] John asserts the following four arguments to attack the judgment: (A) his laches defense should have prevailed; (B) the trial court should not have awarded the full amount of post-judgment interest to Frances; (C) there was insufficient evidence to overcome the statutory presumption set forth in 14 M.R.S. § 864 (2020) that all judgments are satisfied after 20 years after any duty or obligations are accrued by way of the judgment; and (D) Frances should not have been awarded all of her attorney fees.

A.     Laches

[¶10] John contends that Frances inexplicably failed to assert her rights for an unreasonable amount of time and that he has been prejudiced by her delay because he has been diagnosed with dementia and "no longer has the ability to provide testimony or work with his attorney to prepare a defense in a meaningful way."

[¶11] The affirmative defense of laches applies when a party (1) has failed to assert a right for an unexplained and unreasonable length of time

(2) under circumstances that have been prejudicial to an adverse party and (3) it would be inequitable to enforce the right. *See Brochu v. McLeod*, 2016 ME 146, ¶ 13, 148 A.3d 1220. In the context of spousal support arrearages, "the doctrine of laches may be applied to both the principal sum and any interest that has accrued thereon." *Id.* ¶ 24. The party asserting the affirmative defense bears the burden of proof. *See ABN AMRO Mortg. Grp. v. Willis*, 2003 ME 98, ¶ 5, 829 A.2d 527. We review the court's factual findings for clear error and the question of whether laches bars a claim de novo. *See Hawksley v. Gerow*, 2011 ME 3, ¶¶ 4-5, 10 A.3d 715; *see also Glew v. Glew*, 1999 ME 114, ¶ 13, 734 A.2d 676 ("Whether laches applies in a given circumstance is a question of law.").

[¶12] Critically, "[l]aches cannot be predicated on passage of time alone*." Tewksbury v. Noyes*, 138 Me. 127, 135, 23 A.2d 204 (1941) (quotation marks omitted); *see also Schneider v. Dep't of Hum. Servs.*, 617 A.2d 211, 212 (Me. 1992) (citing *Tewksbury* for this proposition). Rather, to meet the first element, the delay must be unreasonable and unexplained. *See Brochu*, 2016 ME 146, ¶¶ 29-35, 148 A.3d 1220 (holding that a thirty-five-year delay in seeking spousal support was insufficient, absent a showing of prejudice, to justify the application of the doctrine of laches).

[¶13]  As to the first element, John contends that the court committed clear error when it found that Frances "did not force the issue of spousal support due to [John's] abusive, demeaning, and threatening behavior." Contrary to John's argument, the record amply supports the court's finding.

[¶14]  Frances testified that she did not press the issue of spousal support because she was afraid that John would burst into her house and beat her, that John had beaten her during their marriage "quite a few times," and that she finally felt safer now that she lived farther away from him in a secure retirement home.  One of the parties' sons testified that John had "slap[ped] Frances around and call[ed] her stupid" and that Frances was "very scared" of John. Another son testified that John had "grabbed" Frances during an argument and that she was fearful of him.

[¶15]  Although Frances testified that she had received some "bad information" from a lawyer who told her not to pursue spousal support, was told by another lawyer to wait until John died to sue his estate so that she would not have to confront him, and, at one time, did not have the money to take John to court, she was clear that her primary reason for not enforcing the spousal support was her fear of John based on his past conduct.  Even if her testimony about her attorneys could be deemed inconsistent with her testimony about

being scared of John, it cannot be said that the evidence compelled the court to find differently than it did "because the court, as fact-finder and sole arbiter of witness credibility, was free to selectively accept or reject portions" of Frances's testimony. *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 12, 982 A.2d 339.

[¶16]  Because the court did not clearly err when it found that Frances's delay was the result of her supported fear of John's violent behavior, John's laches defense fails at the first element.  *See Glew*, 1999 ME 114, ¶ 14, 734 A.2d 676 (noting that when a delay is caused by the opposing party, it is not "unexplained or unreasonable" and a laches defense therefore fails).

[¶17]  Moreover, even if John's conduct was only partially responsible for Frances's delay, he still would not be entitled to invoke the defense of laches because "[w]hen both parties are at fault, neither can assert laches against each other." *Fisco v. Dep't of Hum. Servs.*, 659 A.2d 274, 276 (Me. 1995) (quotation marks omitted); *see Hawksley*, 2011 ME 3, ¶ 5, 10 A.3d 715 (citing *Fisco* for this proposition in a case involving a motion to enforce a divorce judgment); *see also Conners v. Conners Bros. Co.*, 110 Me. 428, 434, 86 A. 843 (1913) (reiterating the fundamental maxim of equity that one "who comes into a court of equity must come with clean hands").

[¶18]  Because John's laches defense fails at the first element and each of the three elements must be met, we need go no further.  That said, with respect to John's argument that he was prejudiced by Frances's delay because he is now suffering from an impaired memory caused by dementia, John never sought a specific finding regarding his competency, even in his motion for additional and amended findings pursuant to Rule 52(b); never claimed to the court that he was incompetent; and, as noted above, while showing antipathy to a live deposition, asserted an ability to answer written questions.  Nothing in the record indicates, and there seems little, if any, dispute that John in fact never paid support starting at least in 1977.  Rather, John asserted that, at some undefined time, he and Frances had made a vague, unwritten, and counterintuitive agreement where, instead of paying spousal support, he would find some sort of job for each of his sons at some point years in the future—testimony from John that the trial court reasonably found not credible.  There was no evidence of any other detrimental reliance by John, inability to pay, or other excuse for him not to have complied with the terms of his divorce judgment.

B.    Post-Judgment Interest

[¶19]  John argues that the court abused its discretion by awarding the full amount of post-judgment interest to Frances.  He contends that the court should have exercised its discretion to waive "some, or all, of the post judgment interest" for "good cause."  *See* 14 M.R.S. 1602-C(2) (2020) ("On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section be fully or partially waived.").  John never filed such a petition, however.  He merely asked the court to determine that the interest was barred by laches and sought further findings on why the court determined that "it would be just to impose $267,339.00 of interest on a judgment of $100,260."

[¶20]   Although we have suggested that there is some connection between the court's discretion to waive interest for good cause pursuant to section 1602-C(2) and the application of laches to post-judgment interest, *see Brochu*, 2016 ME 146, ¶¶ 23-24, 148 A.3d 1220, and we have liberally construed what constitutes a "petition" within the meaning of the statute, *see Austin v. Austin*, 2000 ME 61, ¶¶ 9-10, 748 A.2d 996 (holding that a party's written argument to the trial court asking not to be "penalize[d]" for the other party's  delay  was  sufficient  to  satisfy  the  petition  requirement  of

section 1602-C(2) even if it was not "lucidly" worded), John's arguments to the court regarding interest were based solely on his laches defense. Because the court did not err in rejecting this defense, we conclude that the court did not abuse its discretion in awarding the full amount of interest.[3]

C.      Statutory Presumption of Satisfaction

[¶21]  John argues that Frances's testimony that he has not paid her any spousal support since 1977 was insufficient to overcome the statutory presumption that "[e]very judgment . . . of any court . . . is presumed to be paid and satisfied at the end of 20 years after any duty or obligations accrued by virtue of such judgment . . . ."  14 M.R.S. § 864.  He contends that "it is not enough for an individual under these circumstances to simply testify that the debt is still owed without anything more."

---

[3] In addition to his "good cause" argument, John also briefly argues that "Frances did not provide the court with adequate documentation of the correct amount of post-judgment interest," and "[a]s such, post-judgment interest is not permitted."  Frances did provide the court with legal authorities and a schedule from the Judicial Branch website to support the applicable post-judgment interest rates used in her interest calculation.  Because John has "neither supplied argument nor suggested a rationale in support" of his position that those sources were inadequate, we decline to address the issue any further. *Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 ("An issue barely mentioned in a brief is in the same category as an issue not mentioned at all."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . .  A litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.").

[¶22]  The showing required to overcome a statutory presumption "is one of fact, so the court's decision whether the burden was carried is reversed on appeal only if the evidence compels a different result." *Craigue v. Craigue*, 617 A.2d 1027, 1028 (Me. 1992).  Here, the court found, based on Frances's testimony, that John has made no spousal support payments at least since the first of January 1977, and consequently determined that the section 864 presumption had "been overcome."  The weight to be given to Frances's testimony—i.e., whether it was sufficient to overcome the presumption—was the exclusive province of the court as fact-finder, *see Sloan v. Christianson*, 2012 ME 72, ¶ 33, 43 A.3d 978, and therefore we conclude that the evidence did not compel a different result.

D.    Award of Attorney Fees

[¶23]  Finally, John contends that the court abused its discretion by awarding Frances all her attorney fees.  *See* 19-A M.R.S. § 105 (2020) (authorizing the court to order one party to pay another party's reasonable attorney fees for participation in any family proceeding).  In awarding fees, the trial court found that John's "pretrial tactics significantly added to the cost of this action," referencing the discovery disputes, which could "fairly be laid at the feet of the defendant."  It also noted the extreme disparity between the

parties' annual incomes ($21,000 for Frances, $312,000 for John). John contests that the discovery disputes were his fault and asserts that the court erred by only considering the parties' income and not their assets. We review a court's decision to award attorney fees for an abuse of discretion. *Jandreau v. Lachance*, 2015 ME 66, ¶ 29, 116 A.3d 1273.

[¶24] The court's finding that the discovery disputes were the result of John's conduct is supported by the record, which shows that they all revolved around his reluctance to be orally deposed because of his purported impairments. Moreover, because the court was in the best position to assess the parties' conduct contributing to the amount of fees, its finding as to John's pretrial conduct is entitled to particular deference. *See Est. of Ricci*, 2003 ME 84, ¶ 34, 827 A.2d 817.

[¶25] With respect to the court's consideration of the parties' ability to award the costs, its conclusion that John—whose income is almost fifteen times greater than that of Frances—has a greater ability to absorb the costs of the litigation was more than reasonable, and the court was not obligated to make findings regarding the parties' assets. *See Jandreau*, 2015 ME 66, ¶ 29, 116 A.3d 1273 (noting that courts have the "discretion to consider all factors that reasonably bear on the fairness and justness" of an award of attorney fees

including "the parties' relative capacity to absorb the costs" (quotation marks omitted)).

The entry is:

Judgment affirmed.

---

Laura P. Shaw, Esq., and Christopher L. MacLean, Esq. (orally), Camden Law LLP, Camden, for appellant John E. Quirk Sr.

Charles W. Cox, Esq. (orally), Bloomer Russell Beaupain, Bangor, for appellee Frances Quirk

Bangor District Court docket number FM-2018-559
FOR CLERK REFERENCE ONLY