2008 ME 62

**ESTATE OF Timmy L. BARROWS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2008.

Decided: April 1, 2008.

Roger J. Katz, Esq., Keith R. Varner, Esq., Lipman, Katz & McKee, Augusta, ME, for Kelene Barrows.

Timothy Bryant, Esq., Preti, Flaherty, Beliveau & Pachios, Portland, ME, for Estate of Timmy L. Barrows.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] Kelene Barrows appeals from a judgment entered in the Waldo County Probate Court (*Longley, J.*) finding that she waived her right to an elective share of the estate of her late husband, Timmy L. Barrows. Kelene contends that the Probate Court erred in finding that: (1) she and Timmy intended the premarital agreement to apply in the event of death; and (2) the agreement constituted an effective waiver of her right to an elective share that applied to property acquired by Tim-

my prior to and during the marriage. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Kelene and Timmy entered into a premarital agreement shortly before their marriage in 1997. Kelene signed, in conjunction with the agreement, an affidavit waiving the right to be informed of her spousal rights to Timmy's estate.[1] After Timmy's death in 2004, Kelene filed a petition for an elective share of Timmy's estate. The estate's personal representative denied this petition, raising the premarital agreement as a defense. The Probate Court upheld this denial and Kelene appealed to this Court. We determined that the agreement was ambiguous with respect to its applicability upon the death of a party and remanded for a factual determination of whether Kelene and Timmy intended the agreement to apply in the event of death. *Estate of Barrows (Barrows I)*, 2006 ME 143, ¶ 23, 913 A.2d 608, 614. The Probate Court subsequently took testimony from a number of witnesses and concluded that Kelene and Timmy intended the premarital agreement to apply in the event of either divorce or death and that Kelene waived her right to an elective share pursuant to 18–A M.R.S. § 2–204 (2007). This appeal followed.

## II. LEGAL ANALYSIS

[¶ 3] Premarital agreements are contracts evaluated in accordance with standard rules of contract construction. *Estate of Martin*, 2008 ME 7, ¶ 16, 938 A.2d 812, 819. Where neither party contends that the premarital agreement is unenforceable, we look to the language of the agreement to determine if it includes "a waiver of 'all rights,' or equivalent language" consistent with an intent to renounce all rights to an elective share. *See generally Barrows I*, 2006 ME 143, ¶¶ 12–22, 913 A.2d at 611–14. "When a written agreement is ambiguous, the court must determine the intent of the parties in entering that contract, and that determination is a question of fact that we review for clear error." *Hilltop Cmty. Sports Ctr., Inc. v. Hoffman*, 2000 ME 130, ¶ 21, 755 A.2d 1058, 1063. While we review any determination of underlying facts alleged to constitute waiver for clear error, whether those facts are sufficient to constitute legal waiver is a question of law we review de novo. *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426 (6th Cir.2004); *see also Saga Commc'ns of New Eng., Inc. v. Voornas*, 2000 ME 156, ¶ 7, 756 A.2d 954, 958 (stating that where the facts are established and undisputed, waiver is a question of law reviewed de novo).

### A. The Premarital Agreement's Application in the Event of Death

[¶ 4] Contrary to Kelene's contention, substantial evidence supports the Probate Court's determination that Timmy intended the agreement to apply in the event of death. A former accountant for the family business testified that he advised Timmy a few weeks prior to his marriage to obtain a premarital agreement to protect Timmy's brother, a co-owner of the family business, in the event of death. Although a pre-existing buy/sell agreement already afforded a guarantee that Timmy's brother would retain ownership of the business, Timmy could have concluded that

---

1. The affidavit states, in pertinent part:

2. Prior to the execution of said Agreement, I have waived the right to have an attorney explain to me the rights of a husband to the property of his wife and the rights of a wife to the property of her husband, during marriage, in the event of a divorce, and after death, and to have an attorney explain to me the effect of the attached Agreement on all of those rights.

an additional assurance was warranted. Furthermore, although Timmy's understanding of the agreement six years after its execution is not controlling, the Probate Court permissibly inferred that Timmy's understanding of the agreement remained consistent over time.

 [¶ 5] Nor did the Probate Court clearly err in finding that Kelene also intended the agreement to apply in the event of death. The court made extensive findings and ultimately found as follows:

> [T]his Court finds it reasonable to determine that, given all these facts, Kelene evidently had read, understood and intended the Agreement to mean that "the business would be his and his brother's" [ ] not only "in case there was ever a divorce" [ ] but also, as in the case at hand, upon Timmy's death.

Additionally, Kelene admitted that she did not find confusing key portions of the agreement and attached affidavit.[2] Although Kelene claimed that she did not intend the agreement to apply in the event of death, the court was free to disregard this self-serving statement, *see State v. Deering*, 1998 ME 23, ¶ 15, 706 A.2d 582, 586, and instead conclude, based on the extensive facts before it, that Kelene intended the agreement to apply in the event of death.

### B. Waiver of Right to an Elective Share

 [¶ 6] The Probate Court also properly determined that Kelene, by intending the agreement to apply upon death, effectively waived her right to an elective share. As noted by Kelene, we have long recognized that a party "cannot properly be said to waive that of which he

has no knowledge." *Jewell v. Jewell,* 84 Me. 304, 307, 24 A. 858, 859 (1892); *see also* BLACK'S LAW DICTIONARY 1574 (7th ed.1999) (stating, in defining waiver, "[t]he party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it"). Similarly, courts will normally "not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated." *Metro. Edison Co. v. NLRB,* 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983) (quotation marks omitted).

 [¶ 7] The Legislature, however, explicitly condoned a more permissive approach with the elective share. Under the Probate Code, "a waiver of 'all rights,' or equivalent language" may serve as an effective waiver of this statutory right. 18-A M.R.S. § 2–204. Therefore, as we previously noted in dictum, *see Barrows I,* 2006 ME 143, ¶ 22, 913 A.2d at 613–14, a court may permissibly find waiver of all spousal rights even where such waiver is only generally stated and a party is not explicitly aware of the specific rights being waived; the intent of the parties controls the question. *See Weisfeld–Ladd v. Estate of Ladd,* 920 So.2d 1148, 1149–50 (Fla.Dist.Ct.App. 2006) (finding waiver based on intent to waive where premarital agreement did not refer to "elective share" or "all rights"); *Boetsma v. Boetsma,* 768 N.E.2d 1016, 1022–24 (Ind.Ct.App.2002) (finding waiver where widow claimed the specific nature and extent of the rights she was waiving were never disclosed to her); *Beatty v. Beatty,* 555 N.E.2d 184, 188–89 (Ind.Ct. App.1990) (finding waiver based on in-

---

**2.** The agreement's preamble stated that it was the parties' "desire to fix and determine by this Agreement their mutual property rights and obligations during the marriage, in the event of their divorce, *or upon the death of*

*either of them."* (Emphasis added.) *Cf. Estate of Berzinis,* 505 A.2d 86, 86 (Me.1986) (determining that a wife did not waive her right to an elective share where the premarital agreement "[i]n no way [spoke] of death").

ferred intent to waive all rights, including the right to a survivor's allowance that did not exist at the time the premarital agreement was entered into); *see also In re Estate of Hill*, 214 Neb. 702, 335 N.W.2d 750, 753 (1983) (finding waiver based on the intent of the parties where the agreement did not use the word "waiver").

[¶ 8] In this case, Kelene's affidavit establishes that she knew of the possible existence of the *"rights of a wife to the property of her husband*, during marriage, in the event of a divorce, and *after death"* at the time she signed the agreement. (Emphasis added). *Cf Estate of Berzinis*, 505 A.2d 86, 86 (Me.1986) (finding no waiver where a premarital agreement in no way mentioned death). Further, as stated in the affidavit, she expressly waived her right "to have an attorney explain to [her] the effect of the ... Agreement on all those rights." On this basis, it was proper for the court to conclude that Kelene waived all spousal rights, both known and unknown to her.

██ [¶ 9] Finally, although the parties described Kelene's waiver of rights to Timmy's premarital property using different language than they employed to describe her rights to property acquired by Timmy during the marriage, the Probate Court did not err in determining that Kelene's waiver extended to all property owned by Timmy. Although the use of different language to address analogous issues may imply a different approach, we do not pluck isolated words or phrases from an agreement and examine them alone; the meaning of different contract provisions must still be read in light of the contract as a whole. *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744–45 (7th Cir. 1996). Kelene and Timmy's premarital agreement, read as a whole, indicates that they intended to waive all rights to each other's property, whether acquired before or during marriage. We therefore conclude that Kelene waived all rights to Timmy's property, whenever acquired, and the Probate Court properly denied Kelene's petition for an elective share.

The entry is:

Judgment affirmed.