MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 50
Docket:      BCD-18-245
Argued:      February 5, 2019
Decided:     April 4, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

KIMBERLY B. SCOTT et al.

v.

FALL LINE CONDOMINIUM ASSOCIATION

GORMAN, J.

[¶1]  Fall Line Condominium Association appeals from a declaratory judgment entered by the Business and Consumer Docket (*Mulhern, J.*) invalidating all rules and regulations previously promulgated by Fall Line's Board of Directors but not approved by a majority in interest of Fall Line unit owners.  The court determined that, as a matter of law, none of the Association's rules and regulations had been adopted properly pursuant to the Association's bylaws, specifically section 5.17.  The Association argues that the court erred in granting summary judgment in favor of Kimberly S. Scott and Thomas H. Scott and asserts that (1) the bylaws unambiguously give the Board of Directors the authority to adopt and amend rules and regulations concerning the use and operation of the property and (2) the court's interpretation of section 5.17 of

the bylaws would render the bylaws ambiguous, resulting in a genuine issue of material fact. We affirm the court's judgment in part, but vacate the judgment in other respects and remand.

## I. BACKGROUND

[¶2] The parties agreed to the following facts in a joint statement of material facts. Fall Line comprises 128 condominium units adjacent to Sunday River ski resort in Newry. The Association is a nonprofit organization whose membership consists of all record owners of Fall Line's condominium units. A board of directors is responsible for the day-to-day operations of the Association. Fall Line was organized under the Maine Condominium Act, 33 M.R.S. §§ 1601-101 to 1604-118 (2018), and the Fall Line Declaration of Condominium was adopted on November 19, 1985. Fall Line is governed by its declaration, its bylaws, and certain promulgated rules and regulations. The Board first established "Rules and Regulations Applicable to All Unit Owners" in 1985 and most recently amended the rules in 2017.

[¶3] The Scotts own a unit at Fall Line and therefore are members of the Association. On February 28, 2017, the Association filed a small claims action against the Scotts in the District Court (Rumford) seeking $38.29 in outstanding interest on the Scotts' account and $500 in attorney fees. In response, the Scotts

filed a complaint against the Association and certain members of the Board seeking, inter alia, a declaratory judgment that "all rules, regulations, and limitations affecting Unit Owners and their use of their units and of any common element at Fall Line not approved by a majority in interest by the Unit Owners" are void.[1]   The Association and certain members of the Board counterclaimed against the Scotts; the District Court (*Carlson, J.*) consolidated all causes of action and later transferred the case to the Business and Consumer Docket.

[¶4]  After discovery, both parties moved for partial summary judgment. On June 8, 2018, the court (*Mulhern, J.*) granted summary judgment in favor of the Scotts on two of their counts, including the count seeking the declaratory judgment invalidating all rules and regulations promulgated by the Board without the approval of a majority in interest of the unit owners.[2]   In its

---

[1]  The Scotts simultaneously filed a motion to consolidate the Association's small claims action with their complaint.

[2]  The court also granted a summary judgment in favor of the Scotts with respect to count IV of their amended complaint—a request for a declaratory judgment that the Scotts have permission to access the Association's email list—and granted a summary judgment in favor of the Association on two counts in the Scotts' amended complaint alleging that the Association and named directors violated the Maine Consumer Credit Code, 9-A M.R.S. § 8-509 (2018), and the Federal Fair Debt Collection Practices Act, 15 U.S.C.S. §§ 1692 to 1692(p) (LEXIS through Pub. L. No. 115-442).  With respect to the Association's counterclaim, the court granted a summary judgment in favor of the Scotts on all counts.  The present appeal concerns only the court's grant of a summary judgment for the declaratory judgment invalidating all rules and regulations of the Association.

4

judgment, the court declared "all rules and regulations putatively established by the Association are void, pending a vote to garner the approval of a majority in interest of the unit owners at Fall Line" after determining, as a matter of law, that "none of the extant rules and regulations were properly adopted under the Bylaws." After the court issued its combined order on the cross-motions for summary judgment, the Association timely appealed. *See* 14 M.R.S. § 1851; M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶5] We review a ruling on cross-motions for summary judgment de novo, reviewing the trial court's decision for errors of law and considering the evidence in the light most favorable to the party against whom the judgment has been granted in order to determine whether there is a genuine issue of material fact. *See Estate of Frost*, 2016 ME 132, ¶ 15, 146 A.3d 118. Summary judgment is appropriate only when "the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573. "A material fact is one that could potentially affect the outcome of the suit," and "[a] genuine issue of material fact exists when the evidence requires a fact-finder to choose between

competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504.

[¶6] A condominium association's bylaws and declaration are contracts, c*f. id.* ¶ 10, and "[t]he interpretation of a contract, including whether or not its terms are ambiguous, is a question of law that we review de novo." *Id.* If, however, we determine that language in the contract is ambiguous, then the interpretation of that language becomes a question of fact for the factfinder. *Id.* "Language is considered to be ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation marks omitted).

[¶7] Bylaws must be "construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted). Generally, "we will avoid an interpretation that renders meaningless any particular provision in the contract." *Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 10, 878 A.2d 504 (quotation marks omitted). "The language employed by the parties is to be construed to give effect to the plain

6

meaning of the words used." *City of Augusta v. Quirion*, 436 A.2d 388, 392 (Me. 1981).

[¶8] The language at issue in this case is section 5.17 of the bylaws, entitled "Rules of Conduct." It states,

> Rules and regulations concerning the use of the Units and the Common Areas and facilities *may* be promulgated and amended by the Board of Directors with the approval of a majority in interest of the Unit Owners.

(emphasis added). The Scotts assert that the word "may" indicates that the Board is permitted to promulgate and amend rules and regulations concerning the use of the units, common areas, and facilities, but that, when the Board does so, it must be with the approval of a majority in interest of the unit owners. The Association, on the other hand, argues that the Board has the unfettered authority to promulgate and amend such rules and regulations regardless of whether the unit owners approve, but that the Board may seek to have its actions approved by a majority in interest of the unit owners.

[¶9] As always, we start with the language of the contract itself to determine the contract's meaning. *See Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 10, 878 A.2d 504; *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989. Here, the placement of the word "may" and the context in which it is used determines the plain meaning of the word and the contract. *See City of Augusta*, 436 A.2d at

392. Because "may" appears before the phrase "be promulgated and amended by the Board of Directors with the approval of a majority in interest of the Unit Owners," we would read the word as modifying that entire phrase, unless doing so creates an absurd result. *See id.* As written, the section limits the Board's authority to promulgate or amend "[r]ules of [c]onduct," i.e. "[r]ules and regulations concerning the use of the [u]nits and the [c]ommon [a]reas and facilities . . . ."

[¶10] The Association, however, asserts that "may" should *not* be read as modifying the language it precedes and argues that "may" imposes no limitation on the Board's authority to promulgate or amend rules of conduct. In support of its argument, the Association points to section 2.03(e) of the bylaws, entitled "Powers and Duties [of the Board of Directors]." Section 2.03 states,

> The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Condominium Association and shall do all such acts and things *except as by law or by the Declaration or by these Bylaws may not be delegated to the Board of Directors by the Unit Owners.* Such powers and duties of the Board of Directors shall include, but shall not be limited to, the following:
>
> . . . .
>
> (e) Adoption and amendment of rules and regulations covering the details of the operation and use of the Property.

(emphasis added). Although we agree that section 2.03 does grant the Board the "powers and duties" to adopt and amend "rules and regulations covering the details of the operation and use of the [p]roperty," we note that section 2.03 includes a limiting clause. That clause—italicized above—explains that the Board's authority may be curtailed or held in check by, among other things, provisions in the bylaws. Section 5.17 is just such a check. Because we are careful not to render any language in a contract superfluous, we read section 5.17 to unambiguously limit the Board's broad authority under section 2.03(e) to adopt and amend rules and regulations, at least those rules and regulations of conduct concerning the use of the units, common areas, and facilities. *See Farrington's Owners' Ass'n*, 2005 ME 93, ¶ 10, 878 A.2d 504; *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

[¶11] The Business Court declared "all rules and regulations putatively established by the Association are void, pending a vote to garner the approval of a majority in interest of the unit owners at Fall Line." Because section 5.17 deals exclusively with "rules of conduct," i.e., rules and regulations concerning the use of the units, common areas and facilities, and because section 2.03(e) gives the Board broad authority to enact rules covering the general "operation and use" of the property, the Business Court's declaratory judgment

invalidating *all* rules and regulations established by the Association is overbroad.[3] *See Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (affirming the general principle that contract language must be construed in accordance with the intention of the parties and that all clauses of a contract "must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others"). The limitations found in section 5.17 are applicable exclusively to the rules and regulations concerning the use of the units, common areas, and facilities, and, therefore, the only existing rules and regulations that are "void" are those concerning the use of the units, common areas, and facilities.

[¶12] If the parties cannot agree on which rules and regulations concern the general "operation and use" of the property and which concern the "use" of the units, common areas, and facilities, or cannot undertake successfully the process required to approve any previously adopted rules or regulations, they may have to ask the court to determine which of the rules and regulations previously promulgated or amended by the Board are rules and regulations concerning the use of the units, common areas, and facilities. We sincerely hope

---

[3] The Scotts conceded at oral argument that section 5.17 applies only to rules of conduct and that the Business Court overshot the mark by invalidating all Association rules.

that such a use of judicial resources will not be necessary to make common sense determinations that should be within the parties' own capabilities.

[¶13] To summarize, we declare that section 5.17 unambiguously states that the Board, in order to promulgate or amend rules of conduct concerning the use of the units, common areas, and facilities, must seek approval from a majority in interest of unit owners. There is no such limitation on other types of rules or regulations governing the general operation and use of the property. We do not pass judgment on what constitutes a rule of conduct that dictates the use of the units, common areas, or facilities. If the parties insist on prolonging this litigation, the question of what is or is not a rule of conduct regarding the use of a unit, common area, or facility would be a question of fact appropriate for a factfinder.

The entry is:

> Judgment affirmed in part and vacated in part. Declaratory judgment voiding rules and regulations—not approved by a majority in interest of unit owners—that concern the use of units, common areas, and facilities is affirmed. Declaratory judgment as to all other rules and regulations vacated. Remanded, if necessary, for further consideration of which rules and regulations are rules and regulations of conduct that govern the use of units, common areas, or facilities.

Adam S. Taylor, Esq. (orally), and Andre G. Duchette, Esq., Taylor, McCormack & Frame, LLC, Portland, for appellant Fall Line Condominium Association

Daniel L. Rosenthal, Esq., and David C. Johnson, Esq. (orally), Marcus Clegg, Portland, for appellees Kimberly B. Scott and Thomas H. Scott

Business and Consumer Docket docket number CV-2017-26
FOR CLERK REFERENCE ONLY