MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:    2020 ME 10
Docket:      Wal-19-341
Argued:      January 8, 2020
Decided:     January 23, 2020

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

CURTIS S. DOW

v.

ROBYN (DOW) BILLING

ALEXANDER, J.

[¶1]  Curtis S. Dow appeals from a judgment of divorce from Robyn (Dow) Billing entered by the District Court (Belfast, *Davis, J.*).  Dow contends that the court erred by interpreting the parties' premarital agreement as not applicable to a 401(k) plan he created during the marriage and by failing to consider his testimony that the 401(k) plan was funded, at least partially, with nonmarital property.  He also argues that the court abused its discretion by making contradictory findings regarding its consideration of his nonmarital real estate and the debt associated with that property.  We find no merit in Dow's arguments concerning the premarital agreement and the 401(k) plan, and we determine that any error in the court's consideration of the value of Dow's

2

nonmarital property in its property distribution was harmless. Accordingly, we affirm the judgment.

## I. CASE HISTORY

[¶2] The parties were married in 2010. Prior to the marriage, the parties signed a premarital agreement that was requested and drafted by Dow.

[¶3] Dow filed a complaint for divorce against Billing in July 2017 after seven years of marriage. After a settlement conference, the parties were unable to resolve the case because of disagreements concerning the validity, scope, and interpretation of the premarital agreement. The parties then agreed to bifurcate trial of the issues to allow the court to first decide the issues regarding the premarital agreement and then proceed to the divorce trial, because the "length and scope of the trial" would depend significantly on the court's interpretation of the premarital agreement.

[¶4] Hearing on the premarital agreement was set for July 2018. In the parties' prehearing briefs, the focus was whether Dow's 401(k) plan—which the parties agreed he had created during their marriage—was nonmarital property pursuant to the terms of the premarital agreement.

[¶5] At the evidentiary hearing on the premarital agreement, both sides presented arguments and Billing testified about her understanding of the

premarital agreement and its execution. Apart from brief testimony regarding the validity of the premarital agreement, Dow did not present any evidence regarding the origin of the funds for the 401(k) plan. He relied instead on his argument that the premarital agreement dictated that separately-owned property, whenever acquired, was to be considered nonmarital.

[¶6] After taking the matter under advisement, the court found that the premarital agreement was valid and enforceable, and that it "very explicitly applie[d] only to the property (and liabilities) that the parties owned when they executed the agreement." Accordingly, the court concluded that Dow's 401(k) plan was "marital property subject to equitable distribution."

[¶7] Dow filed a motion to reopen the evidence pursuant to M.R. Civ. P. 43(j), seeking to offer additional evidence on the nature of the 401(k) plan and "extrinsic evidence necessary for the court's interpretation of the premarital agreement." The court denied the motion, noting that it would be unfair, after the issue had been decided, to allow Dow to reopen the record and offer evidence that he could have presented at the earlier hearing.

[¶8] A contested divorce hearing was held in January 2019. Thereafter, the court entered a judgment of divorce with extensive findings of fact and a child support order that is not challenged here. Relevant to the issues on

4

appeal, the court found that the factors enumerated in 19-A M.R.S. § 953(1) (2018) favored distribution of a larger share of the 401(k) plan funds to Billing. Specifically, the court found that (1) the "account was funded through [Dow's] employment, but was made possible by [Billing's] substantial contribution as the homemaker and care provider for the parties' two children," (2) Dow was leaving the marriage with substantially more property than Billing, and (3) Dow would be able to refund the 401(k) account "easily" because his economic circumstances were "far better" than Billing's economic circumstances. As such, the court awarded Billing $126,000 of the 401(k) plan's $179,877 value.[1]

[¶9]   Following the court's judgment, Dow filed a single motion requesting further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), and that the court amend its judgment, *see* M.R. Civ. P. 59(e). The court generally denied Dow's motion, noting that the "vast majority of the issues raised in [the] motion have already been addressed." The court did, however, clarify a few points regarding its consideration and valuation of Dow's nonmarital real estate.

---

[1] The court determined that it would be equitable for Billing to reimburse Dow $11,000 for marital debts and expenses, and her share of the 401(k) plan was ultimately reduced to $115,000.

[¶10]  Dow timely appealed.  *See* 19-A M.R.S. § 104 (2018); M.R. App. P. 2B(c)(2).

## II.  LEGAL ANALYSIS

A.     Interpretation of the Premarital Agreement

[¶11]   Dow first challenges the court's interpretation of the parties' premarital agreement.  The language at issue is as follows:

4.       Rights and Obligations of the Parties

Each of the parties shall retain the title, management, and control of the estates now owned by each of them whether real, personal, or mixed;[2] and all increases or additions thereto, entirely free and unmolested by the other party and may encumber, sell, dispose, give, or provide by will for the disposition of any or all of such estates so separately owned and possessed.

At the death of either, no claim by inheritance, descent, surviving spouse award, homestead, dower or maintenance shall be made by either of the parties against the other or against the estate of the other.

Each of the parties separately waives any and all rights by dower, homestead, surviving spouse award, inheritance, descent or any other marital right arising by virtue of statute or otherwise in and to any parcel of the estate now owned and possessed by the other, and does agree and consent that each shall have full power and control in all respects to exercise free and undisputed ownership, management and disposition of each of such estates and increases

---

2 The court and Dow both identify the punctuation following "mixed" as a semicolon.  However, it appears from the copies of the agreement in both the appendix and the court file that the mark may actually be a comma with a copier artifact near it.  Fortunately, as explained in this opinion, the interpretation of the contract does not turn on whether the mark is a semicolon or a comma.

thereto now owned and possessed by the parties, and each of the parties does waive and renounce any legal and statutory rights that might, under any law, be set up against any part of the estate of the other and does consent that the estate of each shall descend or be disposed of by will to the heirs or legatees or devisees of each of the parties, free and clear of any claim by inheritance, dower, surviving spouse award or homestead or maintenance or any claim otherwise given by law to a husband and wife.

[¶12]   Dow contends that the court's interpretation of the premarital agreement as covering only property owned at the time of its execution—"the estates now owned by each of them"—is erroneous.   He argues that "the operative language of the premarital agreement" is the portion that states, "Each of the parties shall retain the title, management, and control of the estates now owned by each of them whether real, personal, or mixed; and all increases or *additions thereto* . . . ."  (Emphasis added.)  He maintains that the agreement applies to property owned at the time of its execution as well as to after-acquired property—i.e., additions to the parties' respective estates. Alternatively, although he elected not to offer evidence on the issue at the premarital agreement hearing, Dow now argues that the premarital agreement is ambiguous and that we should remand for the taking of extrinsic evidence of the parties' intent.

[¶13]   "Premarital agreements are contracts" that we evaluate "in accordance with standard rules of contract construction."  *Estate of Barrows*,

2008 ME 62, ¶ 3, 945 A.2d 1217. "[T]he interpretation of a contract, including whether or not its terms are ambiguous, is a question of law that we review de novo." *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 6, 206 A.3d 307.

[¶14]  We construe contracts "in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument.  All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989. Ultimately, we seek to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless. *See Scott*, 2019 ME 50, ¶ 7, 206 A.3d 307.  However, if we determine that a contract contains an ambiguity that cannot be resolved from the four corners of the document, the interpretation of the ambiguous language becomes a question for the fact-finder to resolve by taking extrinsic evidence.  *See Estate of Barrows*, 2006 ME 143, ¶ 18, 913 A.2d 608.

[¶15] We determine that the court's ultimate conclusion that the premarital agreement did not apply to property acquired or created during the marriage was correct and that the premarital agreement is not ambiguous. The first paragraph of the above-quoted language—which Dow describes as

8

operative—says nothing about rights arising from marriage. It states that "the parties shall retain title, management, and control of the estates now owned by each of them . . . and all increases or additions thereto, entirely free and unmolested by the other party and may encumber, sell, dispose, give, or provide by will for the disposition of any or all of such estates so separately owned and possessed."

[¶16] Focusing on the "all increases or additions thereto" language, and downplaying the importance of the "now owned" language, Dow suggests that through this paragraph the parties waived their marital rights to property acquired or created during the marriage. However, inferences that downplay or disregard important language in a contract are insufficient to demonstrate a waiver of important statutory rights, such as those stated in the statute governing marital property division, 19-A M.R.S. § 953 (2018).

[¶17] Courts normally "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated. More succinctly, *the waiver must be clear and unmistakable.*" *Metro. Edison Co. v. Nat'l Labor Relations Bd.*, 460 U.S. 693, 708 (1983) (emphasis added); *see Estate of Barrows*, 2008 ME 62, ¶ 6, 945 A.2d 1217 (quoting *Metro. Edison* for this proposition).

[¶18]  Far from being "clear and unmistakable," the first paragraph uses no terms of art—such as marital property, nonmarital property, or property division—that suggest it applies to property acquired or created after the marriage in the event of the parties' divorce.  The statement that the parties shall "retain title, management, and control" of their estates has little bearing on the rights protected by Maine's marital property statute.  *See* 19-A M.R.S. § 953(3) (property acquired during marriage is presumptively marital regardless of whether title is held individually by one spouse).

[¶19]  Similarly, the fact that the agreement permits the parties to devise their separately owned property by will does not, by itself, indicate that the parties intended to waive their marital rights in the event of divorce.  *Cf. Estate of Berzinis*, 505 A.2d 86, 86 (Me. 1986) (holding that a premarital agreement that spoke only in terms of divorce did not operate as a waiver of the wife's right to an elective share of her decedent husband's estate).

[¶20]  The second paragraph deals exclusively with property rights at death.  The third paragraph of the agreement does address marital rights, stating that each party "separately waives any . . . *marital right* arising by virtue of statute or otherwise in and to any parcel of the *estate now owned and possessed* by the other." (Emphasis added.)  It then states that the parties agree

that they shall maintain ownership and control over "each of such estates and increases thereto *now owned and possessed* by the parties." (Emphasis added.) The third paragraph also states that each party waives "any legal and statutory rights that might, under any law, be set up against any part of the estate of the other."[3]

[¶21]   Well-established principles of contract interpretation support reading the third paragraph to waive marital rights only in the estates "now owned and possessed" by the parties at the time of the premarital agreement's execution.  "[S]pecific terms and exact terms are given greater weight than general language."  Restatement (Second) of Contracts § 203(c) (Am. Law. Inst. 1981).  This is because

> [p]eople commonly use general language without a clear consciousness of its full scope and without awareness that an exception should be made.  Attention and understanding are likely to be in better focus when language is specific or exact, and in case of conflict the specific or exact term is more likely to express the meaning of the parties with respect to the situation than the general language.

---

[3] The last part of the third paragraph also references claims "given by law to a husband and wife," but specifically in the context of property rights at the death of either spouse.

*Id.* § 203 cmt. e. Pursuant to this principle, the parties' specific waiver of marital rights only in "the estate now owned and possessed by the other" is presumably more reflective of their meaning than the general waiver.

[¶22]   This interpretation avoids rendering any part of the contract meaningless.[4]  *See Scott*, 2019 ME 50, ¶ 7, 206 A.3d 307.  The first paragraph, as discussed above, permits a party to maintain ownership and control of his or her individual property during the marriage but says nothing about what should happen in the event of a divorce; accordingly, it is unaffected by the trial court's interpretation.   If the first paragraph operates as broadly as Dow suggests, the second and third paragraphs would be superfluous and the "now owned" language would be rendered meaningless.   A contract "is ambiguous when it is *reasonably* susceptible to different interpretations." *Estate of Barrows*, 2006 ME 143, ¶ 12, 913 A.2d 608 (emphasis added).   An interpretation that renders portions of a contract redundant or superfluous— as Dow's suggested interpretation would—is not reasonable.

---

[4] We note that the court relied in part on the parties' disclosure of their then-owned assets at the beginning of the premarital agreement when determining the scope of the premarital agreement. The disclosure of specific assets, however, carries little weight concerning the determination of whether the parties intended the agreement to cover only property owned at the time of execution, because Maine law requires the disclosure of assets and liabilities for a premarital agreement to be enforceable. *See* 19-A M.R.S. § 608(1)(B) (2018).

12

B.     Nonmarital Components of the 401(k) Plan

[¶23]  Dow contends that even if we uphold the court's interpretation of the premarital agreement, the court erred by failing to consider his testimony, offered at the divorce hearing, that the 401(k) plan was partially funded with nonmarital property.  In its judgment, the court expressly declined to consider testimony on that issue because of its previous determination that the 401(k) plan was marital property subject to equitable distribution.  The court explained that Dow had failed to present any evidence on the source of the funds for the 401(k) plan at the earlier premarital agreement hearing and that it would not reconsider the evidence presented on that issue at the later divorce hearing.

[¶24] We review a court's factual findings regarding an asset's classification as marital or nonmarital property for clear error.  *See Bond v. Bond*, 2011 ME 54, ¶ 10, 17 A.3d 1219.  Property acquired during a marriage is presumptively marital property, and the party seeking to overcome that presumption must demonstrate that the property falls within a specifically enumerated exception.  *See* 19-A M.R.S. § 953(2)-(3).

[¶25]  Whether the 401(k) plan was marital property was very much at issue at the time of the bifurcated hearing.  The parties agreed that Dow had

created the 401(k) plan during their marriage but disagreed whether it was excluded from the marital estate by their premarital agreement. *See id.* § 953(2)(D) (marital property does not include property "excluded by valid agreement of the parties"). Although Dow argued that the 401(k) plan was funded with property explicitly identified in the premarital agreement as his separate property, he did not present any evidence that would have allowed the court to trace the funds for the 401(k) plan to nonmarital assets. Accordingly, after the court supportably determined that the premarital agreement did not exclude property acquired or created during the marriage from the definition of marital property, it did not err in concluding that the 401(k) plan was marital property in the absence of any evidence suggesting otherwise. Neither did the court err or abuse its discretion when it declined to let Dow relitigate the issue of the 401(k) plan at the divorce hearing, given the parties' agreement to bifurcate the issue from the divorce hearing.

C.   Property Distribution

[¶26]  Dow asserts that the court abused its discretion in its property distribution by incorrectly describing the value of the nonmarital real property

set aside to him pursuant to the terms of the premarital agreement.[5]  We review a court's distribution of marital property for an abuse of discretion.  *See Laqualia v. Laqualia*, 2011 ME 114, ¶ 10, 30 A.3d 838; *Arey v. Arey*, 651 A.2d 351, 353 (Me. 1994).

[¶27]  In its original judgment, the court listed the "real estate with a value of $400,000" set aside to Dow as part of its consideration of the property distribution factors in 19-A M.R.S. § 953(1).  Dow filed a post-judgment motion challenging that value and pointing out that his equity in the property was only approximately $100,000.  In its order on the motion, the court revised the value it assigned to the property to $363,911, but noted that there was "a discrepancy in the parties' exhibits regarding the exact amount remaining on the mortgage, but the salient amount is the value of the home not its equity."  The court also stated that it "did not consider the value of the residence in its equitable division of the marital property because the residence is subject to the pre-marital agreement of the parties."

[¶28]  Although nonmarital property is not subject to equitable distribution, *see Miliano v. Miliano*, 2012 ME 100, ¶ 16, 50 A.3d 534, courts must

---

[5] We are unpersuaded by Dow's other arguments regarding the court's property distribution and do not address them further.

still consider the value of nonmarital property set aside to each spouse if the parties present evidence on the subject, *see* 19-A M.R.S. § 953(1)(B); *Laqualia*, 2011 ME 114, ¶ 12, 30 A.3d 838. The consideration of the value of such nonmarital property would logically include the amount of equity. *See*, *e.g.*, *Durkin v. Durkin*, 2019 ME 32, ¶ 12, 203 A.3d 812.

[¶29] We conclude, however, that any error in the manner of the court's consideration of the value of Dow's nonmarital real property was harmless. Despite making somewhat contradictory statements, the court evidently considered the market value of the property and, even though it did not make specific findings regarding Dow's equity in the property, it acknowledged that there was debt associated with the property. Dow's attestation that he only has approximately $100,000 of equity in the property does not conflict with the court's ultimate finding that Dow left the marriage with substantially more assets than Billing; thus, it is highly probable that the court's overall property distribution was not affected by any error. *See* M.R. Civ. P. 61; *State v. Guyette*, 2012 ME 9, ¶ 19, 36 A.3d 916 (a properly preserved error "is harmless if it is highly probable that the error did not affect the judgment"); *see also Greaton v. Greaton*, 2012 ME 17, ¶ 7, 36 A.3d 913 ("In appealing a judgment, it is not

enough to challenge procedural errors allegedly made by the trial court without also showing actual error in the judgment.").

The entry is:

Judgment affirmed.

---

Laura P. Shaw, Esq. (orally), Camden Law LLP, Camden, for appellant Curtis S. Dow

Joseph W. Baiungo, Esq. (orally), Belfast, for appellee Robyn Billing

Belfast District Court docket number FM-2017-136
FOR CLERK REFERENCE ONLY