STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
Civil Action
Docket No. AP-23-13

SAMANTHA GOTTWALT,

    Plaintiff,

v.

KIMBERLY PHINNEY, d/b/a
LILAC CATERING AND
MIXOLOGY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON
SMALL CLAIMS APPEAL**

Before the court are Defendant-Appellant Kimberly Phinney d/b/a Lilac Catering and Mixology's ("Phinney") appeal of a small claims judgment entered against her in favor of Plaintiff-Appellee Samantha Gottwalt ("Gottwalt") on March 21, 2023 in the Portland District Court (*Darvin, J.*), and Phinney's Motion to Correct the Record. For the reasons discussed below, Appellant's Motion to Correct the Record is GRANTED in part and DENIED in part and Appellant's appeal is DENIED.

## I.    Motion to Correct the Record

Phinney has filed a Motion to Correct the Record to correct what she contends are misstatements and errors contained within the District Court's Supplemental Findings of Fact and Conclusions of Law. (Def.'s Mot. Correct R. 1.) Although the Motion was filed on the same day as Phinney's brief on her small claims appeal, the Motion was docketed in the District Court's docket record. (*Id.*) This Court first considers whether to address the Motion together

REC'D CUMB CLERKS OFC
SEP 28 '23 AM 11:35

with this appeal or whether the District Court should be the venue to rule on the Motion.

Rule 76F(b) of the Maine Rules of Civil Procedure provides that:

> [i]f anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, . . . the District Court judge, either before or after the record is transmitted to the Superior Court, or the Superior Court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected.

M.R. Civ. P. 76F(b). The rule further provides that "if any difference arises as to whether the record truly discloses what occurred, the difference shall be submitted to and settled by the District Court judge and the record made to conform to the truth." *Id.* The purpose of this rule "is to ensure that the record accurately reflects events that occurred during the hearing or trial, not to provide an opportunity for retroactive alteration of those events." *C.f. U.S. Bank Nat. Ass'n v. Curit*, 2016 ME 17, ¶13, 131 A.3d 903 (quotation omitted) (articulating the purpose of M.R. App. P 5(e) after observing the case law regarding Rule 76F(b) and other predecessor and analogous rules). Rule 76F(b) may not be used to introduce new evidence on appeal. *Tisdale v. Rawson*, 2003 ME 68, ¶ 14, 822 A.2d 1136. "An appellate court must limit its review to the record developed by the trial court." *Id.* (quotation omitted).

Phinney identifies four alleged errors in the record she argues should be corrected. This Court may correct the record on a proper suggestion or of its own initiative. M.R. Civ. P. 76F(b). However, if this Court has any doubt as to whether the record "truly discloses what occurred," this Court must submit the

matter to the District Court judge to resolve. *Id.* This Court considers each alleged error in turn.

### a. Alleged Error 1

Phinney first argues that the District Court's statement on page two of its Supplemental Findings of Fact and Conclusions of Law that plaintiff's September 1, 2020 email included a "reduced selected menu" was an error because the email contained selections for all of the food service items under the contract and therefore the email did not contain any reductions in selections of the menu. (Def.'s Mot. Correct R. 1-2.) Gottwalt's Exhibit A, the Event Catering Service Agreement, provides that Gottwalt was to choose three appetizers, one salad, two main dishes, and two side dishes. (Pl.'s Ex. A.) In the referenced email, Gottwalt selected three appetizers, one salad, two main dishes, and two side dishes, but told Phinney that the guest list would be reduced from approximately 150 guests to between fifty and sixty guests. (Pl.'s Ex. G.) The District Court's full sentence reads as follows:

> As part of the original acknowledgement of postponement, and in anticipation of the first rescheduled November 7th wedding date, plaintiff notified defendant in her email communication dated 9/1/2020 that she was reducing her expected guest list from the prior estimate of "150-175" to "50 to 60" people, with a reduced selected menu that still included a full catered meal.

(Suppl. Findings of Fact and Conclusions of L. 2.) The use of "reduced" in the District Court's Supplemental Findings of Fact and Conclusions of Law appears to refer to the reduced number of guests, not menu category selections. Regardless of what "reduced" is referring to, this part of the District Court's analysis is not material to the Superior Court's analysis on appeal. *See* M.R.

Civ. P. 76F(b). With respect to alleged "Error 1," Phinney's Motion to Correct the Record is DENIED.

### b. Alleged Errors 2 and 3

Phinney next argues that the District Court's statement on page two in reference to a December 3, 2020 email from the defendant to the plaintiff, that "[d]efendant, without explanation, failed to respond for more than six months, when she then finally sent an email on 7/20/21" contains two errors. (Def.'s Mot. Correct R. 2.) First, Phinney argues that it was the plaintiff, not the defendant, that failed to respond to the December 3, 2020 email. (*Id.*) Second, Phinney argues that the District Court failed to recognize Gottwalt's June 9, 2021 email to Phinney. (*Id.*)

After examining the District Court's Supplemental Findings of Fact and Conclusions of Law and the relied upon exhibits, it is obvious to this Court that "[d]efendant, without explanation," should be corrected to "Plaintiff, without explanation . . ." because the District Court's use of "defendant" was an accidental misstatement. *See* M.R. Civ. P 76F(b). In context, it is clear that Phinney could not be expected to respond to her own email, and Plaintiff's Exhibit D shows that Phinney sent the December 3, 2020 email and Gottwalt did not respond in the thread until over six months later. (Ex. D.) Therefore, Phinney's Motion with respect to "Error 2" is GRANTED.

Based on review of the relevant exhibits, it is also clear that Gottwalt did respond to Phinney's email on June 9, 2021, before she sent the July 20, 2021

email. (Exs. D, E.) Therefore, Phinney's Motion with respect to "Error 3" is GRANTED.

The record is ordered corrected to read as follows: "Plaintiff, without explanation, failed to respond for more than six months, when she then finally sent an email on June 09, 2021, informing Phinney that their original menu picks "will be fine" and if Phinney could no longer offer those picks to just choose something else as a replacement. Gottwalt again contacted Phinney on July 20, 2021 . . ."

### c. Alleged Error 4

Phinney further argues that the District Court erred in its Supplemental Findings of Fact and Conclusions of Law in its statement that "[d]efendant seeks to rely on the 'liquidated damages' clause of the contract which allows the defendant to retain the '50% deposit' '. . . for any cancellations made'" because the contract had two liquidated damages clauses. (Def.'s Mot. Correct R. 2-3.) Without having the transcript of the small claims hearing, this Court is unable to evaluate whether this is a misstatement. Regardless of which liquidated damages provision Phinney sought to rely on below, this sentence is not material to the Superior Court's analysis of the small claims appeal. *See* M.R. Civ. P. 76F(b). Phinney's Motion to Correct the Record with respect to "Error 4" is DENIED.

### II. Small Claims Appeal

#### a. Facts

The facts relevant to disposition of this appeal are as follows.

On October 9, 2018, Gottwalt and Phinney contracted for Phinney to provide catering services for Gottwalt's wedding, which was planned for May 16, 2020. (Suppl. Findings of Fact and Conclusions of L. 1.) The price of the catering contract was estimated to be $9,000, and pursuant to the agreement, Gottwalt paid a deposit of one half of the estimate, $4,500, at the time the parties entered the catering contract. (*Id.*)

Due to the COVID-19 pandemic, Gottwalt notified Phinney that the wedding would need to be postponed to November 7, 2020, then again postponed to September 19, 2021. (*Id.* 1-2.) In anticipation of the November 7, 2020 wedding date, Gottwalt informed Phinney that she estimated her guest list would be about fifty to sixty guests, rather than the original estimate of 150 to 175 guests. (*Id.* 2.)

After the second postponement, Phinney emailed Gottwalt on December 3, 2020 requesting an opportunity to review and revise the menu for the postponed wedding on September 19, 2021. (*Id.*) Gottwalt did not respond to this email for over six months. (*Id.*) When Gottwalt responded on June 9, 2021, she directed Phinney to move forward with Gottwalt's original menu choices or to change the menu as Phinney saw fit if the original menu choices would not be available for the September 19, 2021 date. (Ex. D.)

Gottwalt then contacted Phinney via email on July 20, 2021 seeking to "touch base" and "tighten up details" for the upcoming September 19 wedding date. (Suppl. Findings of Fact and Conclusions of L. 2.) On July 25, 2021, when Phinney had not responded to Gottwalt within five days, Gottwalt sent

another email stating that she was "freaked out" at the lack of Phinney's response to her July 20 communication. (*Id.*; Ex. F.) On July 25, 2021, the parties exchanged a series of emotionally laden and accusatory emails and the communications and relationship between the parties quickly deteriorated. (Suppl. Findings of Fact and Conclusions of L. 2.) During this exchange, Gottwalt openly questioned whether or not she still wanted to do business with Phinney, inquired about a full refund, and ultimately informed Phinney that "[i]f you will not give us our money back we will continue to use you on a limited basis and you will owe us money back." (*Id.*; Ex. F.) Gottwalt then wrote again and confirmed that "[m]y husband and I decided we will use your services for appetizers only" and that she expected a refund. (Suppl. Findings of Fact and Conclusions of L. 2; Ex. F.)

Phinney responded that, "[a]s per our contract . . . there are no refunds for cancellations within 90 days of the event, we consider a reduction in services to be the same as a cancellation." (Suppl. Findings of Fact and Conclusions of L. 2; Ex. F.) Phinney further added that her company "continue[d] to be ready and willing to provide you catering services for your event. Please let me know what your decision is and menu desires are." (Suppl. Findings of Fact and Conclusions of L. 2; Ex. F.)

Gottwalt's fiancé, Josh Barber, then took up the correspondence and communication on Gottwalt's behalf and on August 4, 2021 presented Phinney with a proposal to "offer one or two options to fulfill our contract." (Suppl. Findings of Fact and Conclusions of L. 2; Ex. H.) Phinney could either "provide

approximately $1,000 of appetizers from the menu we had discussed to serve our new guest list," as Gottwalt and Barber had chosen to forgo the originally planned dinner service, or Phinney could "[a]ccept $1,000 from the existing deposit . . . as an appreciation of your willingness to work with us." (Suppl. Findings of Fact and Conclusions of L. 2; Ex. H.) Phinney responded via email on August 9, 2021 that because Gottwalt had failed to provide a ninety-day notice of cancellation, there are no refunds. (Suppl. Findings of Fact and Conclusions of L. 2.) In this same correspondence, Phinney restated that her company "continue[d] to be prepared to service [the] event" and requested notification by September 1st of the couple's final decision on whether or not to move forward with Phinney's catering services. (Suppl. Findings of Fact and Conclusions of L. 2; Ex. H.)

Gottwalt's counsel sent a letter to Phinney, dated August 25, 2021, in which he expressed his legal opinion as to the enforceability and terms of the original contract, but expressed a desire to "work with" Phinney to provide services at the September 21 wedding, including having Phinney "provide the originally contemplated meal and beverage service but scaled to the actual number of anticipated guests." (Suppl. Findings of Fact and Conclusions of L. 2-3.) This letter was sent to Phinney's prior business street address with no follow up via email or other means, and Phinney did not receive the letter. (Id. 3.) Gottwalt therefore "missed" the September 1 deadline set by Phinney, and Phinney "missed" the September 7 deadline established by Gottwalt's counsel in his letter. (Id.) Gottwalt then hired a different caterer to provide a sit-down

meal at the wedding for the reduced number of guests, spending approximately $4,300 for the catering services. (*Id.*) Gottwalt then filed this small claims action seeking full return of the $4,500 deposit paid to Phinney as well as attorney's fees and costs for an alleged violation of the Maine Unfair Trade Practices Act. (*Id.*)

The District Court held a hearing on the small claims action on October 13, 2022 and entered judgment for Gottwalt on March 21, 2023. (Notice of J.) With its Notice of Judgment, the District Court issued a Supplemental Findings of Fact and Conclusions of Law in which it found that both parties breached the contract. (Suppl. Findings of Fact and Conclusions of L. 5.) The District Court awarded damages to Gottwalt in the amount of $3,500, representing the $4,500 deposit less the $1,000 Gottwalt offered Phinney in recognition of Phinney's work prior to the wedding. (*Id.* 6.) The District Court also found that Gottwalt failed to establish a claim under the Unfair Trade Practices Act and therefore there was no basis to award her attorney's fees. (*Id.*) Phinney timely appealed the District Court's judgment. (Notice of Small Claims Appeal.)

### b. Standard of Review

"The Superior Court has specific but limited appellate authority in small claims matters." *Cote v. Vallee,* 2019 ME 156, ¶ 9, 218 A.3d 1148. When the defendant appeals the district court's decision and does not request a jury trial *de novo*, the Superior Court's review is limited to questions of law, and it has

no authority to make independent factual findings. M.R.S.C.P. 11(d)(2); *see*
*Taylor v. Walker*, 2017 ME 218, ¶¶ 5-6, 10, 173 A.3d 539.

### c. Discussion

On appeal, Phinney argues that the District Court erred as a matter of
law when it (1) failed to construe the intent of the parties based on the terms of
the written agreement; (2) failed to apply the "plain meaning" standard to the
phrase "menu changes;" (3) failed to include the whole instrument in its
analysis of the contract language; (4) rendered multiple provisions of the
contract meaningless; and (5) violated the basis tenets of contract law.
(Appellant's Br. 2.) In essence, Phinney takes issue with the District Court's
interpretation of the catering contract. Gottwalt argues that the District Court
did not err in finding the contract terms ambiguous and that its factual
determinations based on the contract's ambiguities are not subject to review on
appeal and must be left undisturbed. (Appellee's Br. 4.)

Contract interpretation, including whether the contract's terms are
ambiguous, is a question of law reviewed *de novo* on appeal. *InfoBridge, LLC v.*
*Chimani, Inc.*, 2020 ME 41, ¶ 13, 228 A.3d 721. "Contract language is
ambiguous when it is reasonably susceptible of different interpretations." *Am.*
*Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quoting
*Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)). If
this Court determines that the "'contract is unambiguous, then its
interpretation is [] a question of law. On the other hand, if the contract is
ambiguous, then its interpretation is a question of fact for the factfinder, in

which case [this Court] review[s] the trial court's conclusion for clear error.'" *Brochu v. McLeod*, 2016 ME 146, ¶ 39, 148 A.3d 1220 (quoting *Testa's, Inc. v. Coopersmith*, 2014 ME 137, ¶ 11, 105 A.3d 1037). When the contract is ambiguous, "the trial court's task is to 'determine the intent of the parties in entering [the] contract' using extrinsic evidence, if appropriate." *Id.* (quoting *Estate of Barrows*, 2006 ME 143, ¶ 13, 945 A.2d 1217). Ambiguous contract agreements should be construed against the drafter. *State v. Palmer*, 2016 ME 120, ¶ 14, 145 A.3d 561.

The District Court determined that "changes to the menu," as used in the contract, is ambiguous because reducing the menu to appetizers only could be construed as a change to the menu and the contract fails to limit or define the scope of what constitutes a change of menu. (Suppl. Findings of Fact and Conclusions of L. 4-5.) The District Court further determined that the contract fails to define cancellation or termination to include a "reduction in services." (*Id.* 5.) The failure to include "reduction in services" within the definition of termination or cancellation, combined with the contract's provision allowing a client to change the menu up to fourteen business days in advance of the event, and the District Court's determination that "changes to the menu" is ambiguous led the District Court to conclude that Phinney breached the contract by refusing to change the menu to appetizers only. (*Id.*) The District Court further concluded that Gottwalt also breached the contract by failing to confirm the precise menu changes by the fourteen-day deadline. (*Id.*)

Phinney takes issue with the District Court's contract interpretation on four grounds: (1) the District Court failed to ascertain the parties' intent by failing to consider the whole document;[1] (2) the District Court failed to apply the plain meaning of "menu change;" (3) the District Court's interpretation rendered several provisions of the contract meaningless; and (4) the District Court "violated basic tenets of contract law" by adopting an interpretation that allowed Gottwalt to unilaterally change the menu. This Court will address each argument in turn.

## 1. The Parties' Intent and the Whole Contract

Phinney first argues that the District Court failed to construe the contract according to the intent of the parties. Phinney specifically contends that the District Court failed to divine the parties' intent from the fourth page of the contract, which lists the food options for each course of the catered meal. According to Phinney, the fourth page supplies the parties' intent to enter into a contract for a full catered meal and not a contract for $1,000 worth of appetizers and the District Court's failure to reference the intent of the parties is unreasonable.

It is true that in Maine a contract should be "'construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified,

---

[1] Phinney styles this point as two separate arguments but makes what amounts to the same argument under each heading, therefore this Court will address this argument as one.

limited or controlled by the others.'" *Am. Prot. Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quoting *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 384-85 (Me. 1989)). This rule applies when determining whether a contract is ambiguous. *Peerless Ins. Co.*, 564 A.2d at 384-85. The thrust of the rule directs courts to resolve possible ambiguities with reference to other provisions of the contract rather than taking contractual terms out of context.

As discussed above, this Court considers the issue of whether a contract is ambiguous *de novo*. While the fourth page of the contract may provide some insight into the parties' intent in entering the catering contract, the fourth page is not the exclusive source of the parties' intent. Examining the whole document reveals that the parties intended for Gottwalt to have the ability to change the menu within fourteen business days of the event. (Ex. A, ¶ 9 ("The Customer may notify the Caterer of desired changes to the menu up until fourteen (14) business days before the event) [sic].")) The menu change provision conflicts with a later contract provision requiring "[a]ny amendment or modification . . . or additional obligation" to be in writing signed by each party to be binding. (*See id.*, ¶ 16.) The contract considered as a whole, including the fourth page, is ambiguous as to the procedure and consequences when the customer seeks to eliminate a category of menu offerings or reduce the catering services. As the District Court observed, "changes to the menu" is not defined, nor does the contract define "cancellation" or "termination" to include a reduction in services.

This Court finds that the contract is ambiguous on the issue of menu changes and whether a reduction in services is a menu change within the meaning of the contract. Having found that the contract is ambiguous, this Court must leave the factfinder's interpretation of the contract undisturbed unless its interpretation was clearly erroneous. *Brochu*, 2016 ME 146, ¶ 39, 148 A.3d 1220 (quoting *Testa's, Inc.*, 2014 ME 137, ¶ 11, 105 A.3d 1037). This Court finds no clear error in the manner that the District Court interpreted the contract and the parties' intent. Contrary to Phinney's argument that the District Court failed to consider the whole contract, it is clear from the District Court's Supplemental Findings of Fact and Conclusions of Law that the District Court did in fact consider the contract as a whole. For example, the District Court noted that the provision of the contract allowing the customer fourteen days to make changes to the menu could be read to conflict with the clause requiring any amendment or modification to the contract to be evidenced by a mutual agreement in writing. (Suppl. Findings of Fact and Conclusions of L. 5 & n.11.) It was not clear error for the District Court to construe ambiguities against Phinney, as the drafter of the contract, who had the ability to eliminate these ambiguities but did not do so. *See Palmer*, 2016 ME 120, ¶ 14, 145 A.3d 561.

## 2. Plain Meaning and "Menu Change"

Phinney argues that "menu change" plainly means swapping one food item for another, not eliminating groups of food entirely, and therefore "menu change" is unambiguous. It is self-evident to this Court that reducing a

catering menu from a full meal to appetizers only would change the menu. Menu change could also mean simply changing one offered appetizer to another appetizer option. Because "changes to the menu" is reasonably susceptible to more than one interpretation, this Court agrees with the District Court's conclusion that the contract is ambiguous as to what constitutes a menu change. *See Am. Prot. Ins. Co.*, 2003 ME 6, ¶11, 814 A.2d 989 (quotation omitted). This Court does not find the District Court's conclusion that menu changes include reducing the planned courses to appetizers only to be clear error.

### 3. Contract Provisions Rendered Meaningless

Phinney contends that the District Court's interpretation of the contract rendered other provisions of the contract meaningless and therefore it's interpretation of the contract was unreasonable. Specifically, Phinney argues that the District Court's interpretation allowing the customer to unilaterally cancel most of the menu items rendered meaningless: (1) the first paragraph of the contract wherein the customer agrees to engage the caterer to cook the "agreed menu;" (2) paragraph five of the contract requiring the parties to "do everything necessary to ensure that the terms of this Agreement take effect;" (3) paragraph sixteen requiring any amendment or modification to be agreed to in writing by both parties; (4) paragraph eleven's fifty percent non-refundable deposit clause; and (5) paragraphs three and twelve's liquidated damages clauses for cancellations made within ninety days of the event.

While courts "seek to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless," if there is "an ambiguity that cannot be resolved from the four corners of the document, the interpretation of the ambiguous language becomes a question for the fact-finder to resolve by taking extrinsic evidence." *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244. An interpretation that renders portions of a contract redundant and superfluous is unreasonable when the contract is unambiguous and not reasonably susceptible to more than one interpretation. *See id.* ¶¶ 14, 22.

As established above, the catering contract is ambiguous as to what the procedures and consequences are when the customer seeks to eliminate groups of food offerings from the menu. The District Court's analysis does not render "agreed menu" meaningless because "agreed menu" could mean the menu agreed upon with the customer's changes, which appears to be allowed by the clause of the contract allowing the customer to make changes within fourteen business days of the event. The provision requiring amendments and modifications to be agreed upon in writing is in conflict with the menu change provision. In light of these ambiguities, there was not only one reasonable, unambiguous interpretation of the contract that would give effect to both provisions. In light of the ambiguous contract, the District Court's conclusions, as the fact-finder, are not clearly erroneous. Phinney appears to concede that the District Court's interpretation of the non-refundable deposit provision which allows a reimbursement of unused funds is correct because Phinney

admits that the value of the contract, before the proposed change to $1,000 of appetizers, was reduced to $4,320 due to the reduced size of the guest list, which is less than the $4,500 deposit paid. (See Appellant's Br. 5 n.4.) The District Court's interpretation of the contract does not render deposit provision, cancellation provisions, and "everything necessary" provision meaningless simply because the District Court did not apply them in this situation. In other circumstances, those provisions may have applied.

### 4. "Basic Tenets of Contract Law"

Without citation to authority, Phinney finally argues that Gottwalt should not have been able to unilaterally change the contract and the District Court's judgment condoned that behavior. Generally, both parties must agree to a contract modification. *See Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989) ("Although any contract may be modified by a subsequent agreement, the new agreement must comply with the requirements of a valid contract."). However, both Gottwalt and Phinney agreed to this contract which appears to allow Gottwalt, as the customer, the unilateral right to change the menu or to "reschedule the catering services to another date or event." (Ex. A, ¶ 11.) As discussed at length above, this contract is ambiguous. It was not clear error for the District Court to construe the ambiguities against the drafter, who is in control of the language of the agreement. *See Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶¶ 17-18, 870 A.2d 146.

Phinney also takes issue with the District Court's award of damages.[2] This Court first notes that the District Court found both parties to be in breach, and the judgment for Gottwalt represented a reimbursement for her overpayment, not an award for her breach. Phinney argues that the $1,000 offset was not a sufficient measure of her damages for her financial losses.

The valuation of damages is a question of fact. *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 (quoting *Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417). Damages must be proven to a reasonable certainty. *Merrill Trust Co. v. State*, 417 A.2d 435, 440 (Me. 1980). Appellate review of damages is for clear error and damages awards should be affirmed as long as there is any competent evidence in the record supporting the award. *Brown v. Compass Harbor Vill. Condo. Ass'n*, 2020 ME 44, 229 A.3d 158.

Here, the District Court specifically noted that Phinney provided little evidence on the issue of damages, with only generalized references to costs incurred but no specific documentation or calculation of her damages. (Suppl. Findings of Fact and Conclusions of L. 6.) The District Court based its calculation of Phinney's damages on Gottwalt's recognition and quantification of Phinney's work in the amount of $1,000. (*Id.*) This measure of damages is supported in the record, (Ex. H.), therefore this Court affirms the District Court's calculation of damages.

---

[2] Phinney argues on appeal that this Court should adopt her interpretation of the contract because Gottwalt's interpretation of the contract was made in bad faith. The District Court did not make a factual finding that Gottwalt acted in bad faith and this Court, on appeal, has no authority to make independent factual findings. *Taylor*, 2017 ME 218, ¶ 6, 173 A.3d 539. This Court will not adopt Phinney's interpretation on the basis of bad faith in the absence of a factual finding of bad faith.

For the reasons discussed above, Phinney's small claims appeal is DENIED and the District Court's judgment is AFFIRMED. Phinney's Motion to Correct the Record is GRANTED in part and DENIED in part.

### III. Order

Accordingly, it is hereby ordered and the entry shall be: "Judgment of the District Court is AFFIRMED."

On page 2, paragraph 2 of the District Court's Supplemental Findings of Fact and Conclusions of Law, the language "Defendant, without explanation, failed to respond for more than six months, when she finally sent an email on" is STRICKEN from the record and replaced with the following language: "Plaintiff, without explanation, failed to respond for more than six months, when she then finally sent an email on June 09, 2021, informing Phinney that their original menu picks "will be fine" and if Phinney could no longer offer those picks to just choose something else as a replacement. Gottwalt again contacted Phinney on . . . ."

The clerk may enter this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED.

Dated: September 29, 2023

_____
Deborah P. Cashman
Justice, Superior Court

Plaintiff-Jeffrey Shafto, Esq.
Defendant-Terry Mitrenga, Esq.

Entered on the Docket: 10/02/2023